Catherine Turner, Appellee, v. Henry Schuh et al., Appellants.
Appeal of Francis William Utz et al.

Gen. No. 40,150.

318

Heard in the first division of this court for the first district at the June term, 1938. Opinion filed November 21, 1938. Rehearing denied December 5, 1938.

Maximilian J. St. George and Frederick A. Lind, both of Chicago, for appellants.

Edward S. Cody and Albert E. Hallett, Jr., both of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

October 2, 1934, Catherine Turner filed her complaint in chancery to foreclose a trust deed made by Henry Schuh January 24, 1928, to secure an indebted-

ness of $51,000. Defendant, Henry Schuh, the mortgagor, answered and filed a counterclaim for the return of $55,019.23 he had paid plaintiff toward the purchase of the land conveyed by the trust deed, for the claimed failure of plaintiff and the trustee named in the trust deed to execute deeds releasing several of the lots from the lien of the mortgage, in accordance with the provisions of the trust deed. Plaintiff answered the counterclaim denying that Henry Schuh was entitled to rescind the sale of the property and to have the money he had paid returned to him, for the reason that he was in default in making payments on the indebtedness.

The record discloses that January 24, 1928, the owners of about 42 acres of land near Harvey, Illinois, sold the property to Henry Schuh for $61,000, $10,000 of which was paid in cash and the mortgage in question given to secure the payment of the remaining $51,000. Schuh was to subdivide the acres into lots and sell them. By the trust deed Schuh reserved the right to make partial payments on the indebtedness, and he was required to deliver to the mortgagees copy of the plat showing the subdivision and the price for which he was to sell each lot. The trust deed further provided that the mortgagees should make out a schedule fixing the amount they were to receive for each of the several lots, and that upon such amounts being paid the lot or lots would be released from the lien of the mortgage. The aggregate amount to be paid for the releases was $57,500, and upon Schuh making the proper payments he was given the right to select the lot or lots he desired released. Afterward the property was subdivided and there is evidence that the schedules of prices above referred to were given.

December 1, 1936, Francis William Utz and Maria Utz, his wife, by leave of court filed their intervening petition in which they set up that on March 8, 1928,

they entered into a written agreement with Schuh to purchase certain lots in the subdivided property for which they were to pay $10,600; that they paid this amount to Schuh, and on information and belief charged the fact to be that Schuh had paid the mortgagees between February 1, 1928, and October 20, 1930, more than $33,000 toward the price of the land; that the $10,600 was a part of this sum; that it was the duty of the trustee to release the lots purchased by them from the lien of the trust deed, but that he refused to do so. They prayed that the trustee be directed to release the trust deed as to such lots, and that Schuh be required to pay to them the $10,600 with interest; that they be subrogated to Schuh's rights under his counterclaim, or the lots be released and declared free and clear of the mortgage lien.

January 12, 1937, Anna Marie St. George filed her intervening petition setting up that on April 11, 1928, she entered into a written contract with Schuh to purchase certain lots and blocks in the subdivided property for $100,000, which was to be paid by conveying to Schuh all her equity in certain real estate in Chicago; that afterward Schuh conveyed to her two blocks of the property of the value of $10,000; that she demanded a conveyance by him of the balance, but he failed and refused to do this, and that there was due to her from Schuh $90,000; that a decree be entered against Schuh for $90,000, and that she be subrogated to Schuh's counterclaim against plaintiff; that plaintiff be decreed estopped from foreclosing the trust deed on the balance of the property which had not been deeded to her, and that the lien of the trust deed be released therefrom.

After the issues were made up the cause was referred to a master in chancery, who took the evidence, made his report and recommended a decree in accordance with the prayer of plaintiff's complaint, and that

a money decree be entered in favor of the Utzes against Schuh for $10,600 with interest thereon at 5 per cent per annum from December 30, 1930, for his failure to convey the lots in accordance with the terms of the written contract entered into between him and the Utzes. That there was due Anna Marie St. George from Schuh $90,000, with interest thereon at 5 per cent per annum from April 11, 1928, for his failure to convey the property to her in accordance with the terms of his contract; that Schuh's counterclaim be dismissed for want of equity, and that the Utzes and Miss St. George had no greater rights against plaintiff than Schuh had. The master also found that Schuh made no defense to the claim of Miss St. George or the claim of the Utzes. Objections and exceptions to the report were overruled and a decree entered in accordance with the master's report. Defendant Schuh, the intervenors, the Utzes and Anna Marie St. George, appeal.

The record discloses that January 24, 1928, the 42 acres were conveyed by the owners to defendant, Henry Schuh, for $61,000, $10,000 of which was paid in cash and the balance of $51,000 was evidenced by 8 notes of that date made by Schuh, two for $2,500 each, due in 30 and 60 days respectively; 5 for $5,000, each due on or before 6 months, one year, 18 months, 2 years and 30 months; and one for $21,000, payable on or before 3 years after date; that to secure the payment of the balance of the purchase money Schuh executed his trust deed to Albert D. Murray, trustee, David T. Smithson, successor in trust, and the Northern Trust Company, second successor in trust; that afterward Schuh subdivided the property and expended certain moneys in the improvement of it for subdivision purposes; that he began to sell the lots and from time to time paid the first 4 notes aggregating $15,000; he also paid $2,800 on account of note number 5, leaving a balance due on the principal of $33,200. The

property was subdivided into 10 blocks of 247 lots, and from time to time as Schuh made payments to the mortgagees, 37 lots were released from the lien of the mortgage. The last release deed was dated November 20, 1930. Schuh defaulted in the payment of $2,200 of the $5,000 note becoming due July 24, 1929; he was also in default on the $5,000 note due January 24, 1930, the note for the same amount due July 24, 1930, the $21,000 note due January 24, 1931, and in the payment of the general taxes for the year 1930 and subsequent years. He made his last payment to the mortgagees on the notes in 1930. Schuh testified that he received payments from the purchasers of the lots he sold after January, 1930, but there is no evidence that any of such money was paid by him to plaintiff on the notes.

The finding of the master, approved by the chancellor, was that since Schuh was in default in the payment of the indebtedness secured by the mortgage, which default occurred July 24, 1929, and afterwards for failing to pay the other notes and also in failing to pay the taxes, he was not entitled to release deeds — that he was entitled to no relief. Another finding of the master, approved by the chancellor, was that if any of the defendants were entitled to a release deed they should have filed a bill for specific performance.

Plaintiff contends that Schuh being in default at the time he demanded release deeds, was entitled to no relief; that "Schuh's privilege of obtaining partial releases had been extinguished long before he first requested such releases." In support of this counsel cite 2 Jones on Mortgages (8th ed.), sec. 1259, p. 752; *Clason's Point v. Schwartz,* 262 N. Y. S. 756; *Reed v. Jones,* 133 Mass. 116; *Ryan v. Rizzo,* 114 Conn. 467; *Gillies v. Dyer,* 93 N. J. Eq. 635; *City Bank v. Heckmann,* 297 N. Y. S. 592, and other cases. These authorities sustain counsel's contention.

In Jones on Mortgages, from the section cited counsel quote: ''Even if the privilege is not expressly limited to the maturity of the mortgage, it seems that a partial release can not afterward be demanded; for it would be a fraud upon the rights of the mortgagee to hold that the mortgagor, while in default and no longer endeavoring to carry out his contract, should be permitted to select out the more valuable parts of the land and redeem them by paying the stipulated price, and leaving the less valuable parts unredeemed.'' But Professor Jones, in the same section, continues as follows: ''But on the other hand, construing such agreements in connection with the other provisions of the mortgage, and in the light of the manifest purpose which it was designed to subserve, it may be necessary to hold that the right to a partial release upon the stipulated terms continues until the mortgagee has fully executed the power of sale, or has otherwise foreclosed the mortgage.'' In support of this statement the author cites *Vawter v. Crafts,* 41 Minn. 14 (42 N. W. 483.)

We are unable to agree with the conclusion of the master and the chancellor or the contention of counsel for plaintiff. In the instant case the record discloses that 42 acres were sold to Schuh with the express understanding that the land was to be subdivided. Obviously he was to sell the lots, and it is common knowledge that in such a situation the several persons purchasing the lots would not pay all cash but payment was to be made in instalments, and that such is the fact in the case before us is shown by the evidence. Moreover, it is manifest that neither the grantors of the property nor Schuh, the purchaser, put such a construction on the matter. This is shown by the undisputed evidence that Schuh was first in default in making the payments July 24, 1929, and continued in such default thereafter; yet we find partial releases executed

by the trustee at various times, the last being November 20, 1930, about a year and a half after Schuh went into default. And for these same reasons we hold the contention of plaintiff that, "Unless the demand for partial releases is made simultaneously with the part payment, the privilege of obtaining such partial release is waived" cannot be sustained. Schuh was making partial payments from time to time out of the moneys received by him from the parties to whom he sold the lots. Such payments were not sufficient in amount in all cases to warrant the giving of release deeds at the times the various payments were made.

In *Vawter v. Crafts,* above cited, the Supreme Court of Minnesota held that where a mortgage was given on a tract of land to secure the payment of moneys at certain dates, as provided in an agreement that the mortgagor would plat the lands and that the mortgagee would release any of the lots when thus platted upon payment of a specified sum for each lot, the right to a release was not terminated by default in the payment of the sum secured by the mortgage, but continued in force until the mortgagee had fully executed the power of sale of the mortgaged premises. It was there further held that the covenant as to partial releases of the land ran and inured to the benefit of the grantee of the mortgagor who purchased one of the lots. The court in speaking of the provision for partial release said (p. 16) : "This provision was manifestly inserted in the mortgage with reference to the sale of these lots, when platted, to different parties and to facilitate such sales. . . .

"It is claimed, however, that this agreement to give releases is conditioned upon performance by the mortgagors of all the covenants and conditions of the mortgage, and that, as default had been made in these, the right to demand a partial release no longer existed. There is certainly no express provision to this effect.

By its terms the covenant is unconditional. If there is any such condition, it must be implied from other provisions in the mortgage. The covenant is not in its nature necessarily dependent on any other covenant or condition in the instrument. . . . The provisions of the mortgage as to foreclosure and sale of the mortgaged premises, in case of default, do not support defendant's construction of the covenant. They are to be construed in connection with that covenant, and as qualified by it. So construed, there is no inconsistency between them. Reference is made to the supposed injustice and unreasonableness of construing the covenant as requiring the mortgagee to execute a partial release after there had been default in the conditions to the mortgage, and interest had accrued, and perhaps expenses incurred in commencing foreclosure proceedings. But we can not see sufficient force in this to warrant attaching by implication a condition or limitation to the covenant. If the mortgagee is paid the proportionate share of the accrued interest, and reimbursed for his expenses, we do not see how he can be prejudiced. His remaining security would be just as ample as if the release had been demanded before default, and, in case foreclosure proceedings had been commenced, they would not be defeated or affected, as to the remaining lots, by the execution of a partial release. On the other hand, a contrary construction might work harshly against purchasers from the mortgagors, and defeat the very purpose for which the covenant was inserted. . . .

"Construing this covenant in connection with the other provisions of the mortgage, and in the light of the manifest purpose which it was designed to subserve, we are of the opinion that the right to partial release upon the stipulated terms continues until the mortgage has been fullly executed by sale of the mort-

gaged premises. See *Clark v. Fontain*, 135 Mass. 464, 144 Mass. 287.)''

In the instant case under every principle of equity and fair dealing, the purchasers of lots from Schuh who made their payments to him, he in turn making payments on account of the purchase price, ought not to be barred from having their lots released because of some default of Schuh. When plaintiff receives from Schuh the amount she is entitled to for any particular lot as specified in the schedule prepared by plaintiff, she in no way suffers any damage by releasing such lot—she is made whole in accordance with the terms of the agreement with Schuh. This has been the ruling of our Supreme Court in *Lane v. Allen*, 162 Ill. 426, and *Williams v. Spitzer*, 203 Ill. 505.

In the *Lane* case it was held that a mortgagor is not bound to pay the whole indebtedness in order to enforce the provision of a mortgage for a release of a portion of the premises upon certain partial payments, although at the time the mortgagor was in default. In that case a bill was filed to foreclose a mortgage on property which had been subdivided. The mortgagor filed a cross-bill to compel the release of a portion of the premises under the stipulation in a trust deed for partial payment of $500 or more, and it was held that the prayer of the cross-bill should be allowed. The bill of foreclosure there was filed after the maturity of the last note. The court there said (p. 430) : ''It cannot be said that it would be inequitable to compel the parties to carry out their contract, unless relief is barred under some rule of equity. There is no claim nor any evidence that Lane has done anything that could estop him from insisting upon his contract. The bill in this case was filed immediately after the maturity of the last note, and it was not shown that the parties had suffered in any manner or delayed enforcing their rights, relying upon the security upon

the whole tract, as was the case in the only authority cited by appellees on this question, where the parties delayed foreclosure for a year and a half, during which they thought, and had a right to think, the mortgage covered the whole land.''

In the instant case counsel for plaintiff contend that plaintiff delayed several years after the default before filing foreclosure. But just how plaintiff suffered any damage by reason of this does not appear. The court takes judicial notice that from 1929 for a number of years, under the financial condition of the country, there was great depreciation in the value of real estate and that a foreclosure sale brought far less than in former times. *Straus v. Chicago Title & Trust Co.*, 273 Ill. App. 63; *Atchison, T. & S. F. Ry. v. United States*, 284 U. S. 248. If, upon default of Schuh plaintiff had proceeded with the foreclosure, we think it obvious she would have received much less for the property than what she was to have received for it from Schuh, the sale having been made in 1928. And in receiving the 1928 price of the property she would be making instead of losing money; it is the 1928 price she is to receive as a prerequisite to the execution of releases.

As to the contention of defendant Schuh that he was entitled to a deed rescinding the sale by tendering a few days before the complaint was filed in 1934, quit-claim deeds to the lots remaining unsold, and entitled to a return of the moneys he had paid, we are of opinion that the claim cannot be sustained. In the written notice served upon plaintiff by Schuh September 28, 1934, he tendered quitclaim deeds to the lots remaining unsold by him and those which had not been released from the lien of the mortgage, and demanded ''the repayment . . . of all moneys paid to you on account of the purchase price'' including interest thereon. Obviously Schuh was not entitled to the re-

turn of all his money because 37 of the lots had been released. Moreover, Schuh was guilty of laches in failing to rescind. He could not complain because he had not demanded releases sooner. Nor is there any merit in his contention that some time before the filing of the foreclosure suit he offered to pay plaintiff a certain specified amount for each of the lots remaining unreleased. Obviously he could not demand a release unless he paid the price he had agreed to pay, as shown by the schedule of prices prepared by plaintiff.

Nor do we think the claim made by defendant Anna Marie St. George can be sustained. She did not pay Schuh the $100,000 for the lots and blocks she purchased from him, but only transferred to him in payment for such lots and blocks an equity she had in certain Chicago real estate; and there is no evidence nor any contention that we have been able to find that Schuh paid plaintiff the schedule price fixed for the lots and blocks purchased by Miss St. George. Obviously plaintiff was not required to execute releases until she received payment for the property sought to be released.

The claim of the Utzes for the $10,600 which they paid to Schuh for the lots purchased by them is entirely different. Counsel for the intervenors (Anna Marie St. George and the Utzes) say that there were 247 lots in the subdivision, of which 37 were released; that the amount paid by Schuh to plaintiff on account of the principal indebtedness secured by the mortgage was $18,450; that from this sum notes 1 and 2, totalling $5,000, must be deducted, leaving a balance for the purpose of releases of $13,450, and that for the release of the 37 lots Schuh paid plaintiff $9,250, leaving a net balance available for additional releases of $4,200. We hold this $4,200 should be applied toward the securing of releases of the lots bought by the Utzes according to the schedule of prices fixed by plaintiff for such releases; but since that schedule is not in the record we must remand the matter.

The decree of the circuit court of Cook county is affirmed in all respects except as to the lots purchased by the Utzes, and as to that the matter is remanded for further proceedings in accordance with the views expressed in this opinion.

*Decree affirmed in part, reversed in part and remanded with directions.*

McSurely, P. J., and Matchett, J., concur.