**THERMO-STITCH, INC., Appellant,**

v.

**CHEMI-CORD PROCESSING CORP. and Standwear Pleating Co., Inc., Appellee.**

**No. 18442.**

United States Court of Appeals Fifth Circuit.

Sept. 15, 1961.

---

Gus Feuer, Miami, Fla., I. Walton Bader, Bader & Bader, New York City, for defendant-appellant.

Samuel J. Kanner, Miami, Fla., Howard I. Brenner, New York City, Patton & Kanner, Miami, Fla., for plaintiffs-appellees.

Before TUTTLE, Chief Judge, and BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This litigation is a product of a patent dispute in the garment industry. The case turns on the controlling effect of an important recent decision of the United States Supreme Court, Beacon Theatres v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988.

Since 1953 Chemi-Cord Processing Corporation, a New York corporation, has manufactured a chemically treated thread for sale to pleaters, manufacturers of trimmings, and garment manufacturers. When fed into a pleating machine the thread holds pleats temporarily in place, enabling the pleats to be permanently stitched, after which the thread serves no purpose and may be removed. Thermo-Stitch holds three patents which allegedly encompass the thread. The principal patent in dispute was issued in 1956. Thermo-Stitch does not manufacture or sell the thread. There is only one other manufacturer of the thread, defendant's licensee (not a party to this action). According to Chemi-Cord, Thermo-Stitch continually and improperly has harassed Chemi-Cord and its customers by telling the trade that Chemi-Cord infringed Thermo-Stitch's patents. For example, in 1957 Thermo-Stitch brought suit in Mississippi for $2,000,-

000 against certain customers of Chemi-Cord alleging infringement of its patents; two of the defendants were large department stores selling completed garments. At the same time, it circulated a letter to the trade asserting that Chemi-Cord's product infringed its patents and calling attention to the Mississippi suit. Thermo-Stitch has not brought any legal action against Chemi-Cord itself.

Chemi-Cord, joined by a customer, Standwear Pleating Co., Inc., filed suit in the Southern District of Florida to restrain Thermo-Stitch from interfering with its business relations and from harassing it by threats of suit. The complaint asks for an injunction against Thermo-Stitch and for a declaratory judgment that the three patents held by Thermo-Stitch are invalid and not infringed. Thermo-Stitch says that the shoe is on the other foot; it counterclaims for damages for patent infringement, fraud, and anti-trust violations. Importantly for this appeal, Thermo-Stitch demanded a jury trial upon the issues of fact the counterclaims raise. On the ground that the complaint sought equitable relief, the plaintiffs moved (1) for an immediate and separate trial on the issues of validity and infringement, and (2) to strike the defendant's motion for a trial by jury on those issues. The district court granted the plaintiffs' motion on authority of Rule 42(b) F.R. Civ.P., 28 U.S.C.A.[1] In view of Beacon Theatres v. Westover, this Court feels compelled to hold that the court below exceeded its discretion in not ordering a jury trial.

■ Before Beacon Theatres was decided the law was unclear, but usually the determinative test on the point at issue was the "basic character" of the relief sought. Of course, at common law a jury trial was available as of right in any action brought at law; in suits in equity, on the other hand, questions of fact were determined by the court sitting without a jury.[2] The Seventh Amendment,[3] preserving the right to trial by jury in actions at law, planted deep in American law the distinction between legal and equitable causes of action. As new rights of action developed, courts characterized them as legal or equitable by analogy to their historical counterparts to decide whether they created rights to a jury trial.[4] In 1938 merger of the federal courts of law and equity caused considerable uncertainty in the determination of jury trial rights; the liberal joinder provisions and the broad, sometimes mandatory, counterclaim provisions of the Federal Rules[5] mixed legal and equitable causes in a single litigation with unprecedented frequency. The Federal Rules, however, are something short of the Constitution and, by virtue of the Seventh Amendment, neither party waives the right to a jury trial of a legal claim by asserting it as a counterclaim to an equitable claim. The difficulty comes in deciding whether the legal or the equitable cause should be tried first— an issue of practical importance to litigants, since the determination of either cause acts as collateral estoppel on common questions of fact in the other. The broad grant of discretion under Rule 42 for a trial judge to order separate trials would seem to imply authority to decide the order of the separate trials, but courts struggled with this problem with-

1. Rule 42(b) reads: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

2. See 5 Moore, Federal Practice § 38.11 [6], [7] (2d ed. 1951).

3. The Seventh Amendment to the United States Constitution, 28 U.S.C.A. § 2072, reads: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." For a summary of jury trial practice in the federal courts prior to 1938 see 5 Moore, supra, § 38.03.

4. 5 Moore, supra, § 38.11[7].

5. Fed.R.Civ.P. 18, 13.

out clear guidelines. Some decisions rested on the "basic nature" of the case taken as a whole.[6] In many other decisions this test was not recognized and the choice was left to the discretion of the trial judge.[7] On occasion, attempts to apply the "basic nature" test have led to inconsistent results.[8] Beacon Theatres eliminates this test to determine order of trial under rule 42(b).

The appeal in Beacon Theatres presented to the Supreme Court a question similar to the one before us. The dispute in that case arose under the Sherman Antitrust Act, 15 U.S.C.A. § 1 et seq. Beacon, a motion picture exhibitor, notified Fox, the plaintiff, that certain Fox exclusive "first run" contracts with movie distributors violated the Sherman Act and threatened to sue for treble damages. Fox sought a declaratory judgment that its contracts were lawful and prayed for an injunction pending final resolution of the litigation, to prevent Beacon from bringing an antitrust suit against Fox or its distributors. Beacon answered with a counterclaim for treble damages, demanding a jury trial on the factual issues. The district court viewed the issues raised by the complaint as essentially equitable and ordered a separate trial of these issues before the court without a jury. The Supreme Court held that the district judge abused his discretion in ordering trial of the equitable claim first, and ordered that the case be submitted to the jury.

Although similar in broad outline, the Beacon Theatres case is distinguishable in one respect from the case at bar. In the instant case the request for an injunction consitutes a valid equitable claim independent of the legal cause of action although of course related to it. In Beacon Theatres, however, the claim for equitable relief was of dubious stature: the plaintiff's major interest was in a declaratory judgment [9] and the purpose of the injunction was only to free the plaintiff from secondary lawsuits while the prime case was being litigated. There was no serious inadequacy of legal remedy, since even if Beacon Theatres had carried out a threat to sue in another court such a suit would have achieved Fox's objective of litigating the lawfulness of its contracts. The single purpose of the declaratory judgment suit was to

---

6. See Reliance Life Ins. Co. v. Everglades Discount Co., 5. Cir., 1953, 204 F.2d 937; Rosanna Knitted Sportswear v. Lass O'Scotland, D.C.S.D.N.Y.1952, 13 F.R.D. 325. See also 5 Moore, supra, § 3816.

7. See e. q., Tanimura v. United States, 9 Cir., 1952, 195 F.2d 329; Orenstein v. United States, 1 Cir., 1951, 191 F.2d 184 (dictum).

8. Compare General Motors Corp. v. California Research Corp., D.C.D.Del.1949, 9 F.R.D. 565 and Ryan Distributing Company v. Caley, D.C.E.D.Pa.1943, 51 F. Supp. 377 with Rosanna Knitted Sportswear, Inc. v. Lass O'Scotland, D.C.S.D. N.Y.1952, 13 F.R.D. 325. General Motors Corp. v. California Research Corp. is very similar to the instant case. General Motors sued for a declaration that defendant's patents were invalid and that the plaintiff was not infringing such patents. As in the instant case, the plaintiff asked for an injunction restraining the defendant from suing for any alleged infringement. California Research filed an answer and a counterclaim for damages, as-

serting the validity of the patents and their infringement by General Motors, and demanding a jury trial. The plaintiff moved to strike the demand. The court held that the defendant was entitled to a trial by jury on the issues raised by the counterclaim, including the common issue of infringement. Other courts support this holding: Oklahoma Contracting Co. v. Magnolia Pipeline Co., 1952, 5 Cir., 195 F.2d 391; Lisle Milles, Inc. v. Arkay Infants Wear, Inc., D.C.E.D.N.Y.1950, 90 F.Supp. 676; Ryan Distrib. Corp. v. Caley, D.C.E.D.Pa.1943, 51 F.Supp. 377.

9. The Court pointed out that the Declaratory Judgment Act (28 U.S.C.A. §§ 2201, 2202; F.R.Civ.P. 57), while allowing prospective defendants to sue to establish their non-liability, preserves a right to a jury trial for both parties. It might even be argued, although the Court did not make such an argument, that declaratory relief in itself would be adequate since the effect of a declaratory judgment for purposes of res judicata would seem to be as great as the effect of a judgment on the counterclaim.

litigate plaintiff's potential damage liability. By contrast, a determination of the validity of Thermo-Stitch's patents and of its claim of infringement is not all that Chemi-Cord requires—it would also need an injunction to stop interference with its customers. The reasoning of the Beacon Theatres decision, however, clearly applies to this case. To interpret it in such a way that it should not control this case would be to ignore the express statement of the opinion that the decision was not based on the limited nature of the equitable claim involved.

 Beacon Theatres holds that where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is "very narrowly limited and must, wherever possible, be exercised to preserve jury trial." 359 U.S. at 510, 79 S.Ct. at 956, 3 L.Ed.2d at 988. Analogizing a motion for a non-jury trial of common issues to a suit for an injunction, the Court held that a showing of irreparable injury and inadequate relief at law is required: "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. At least as much is required to justify a trial court in using its discretion under the Federal Rules to allow claims of equitable origins to be tried ahead of legal ones, since this has the same effect as an equitable injunction of the legal claims." 359 U.S. at pages 506–507, 79 S.Ct. at page 954.[10] While the right to trial by jury is a constitutional one, no similar importance attaches to trial by court. Under the flexible procedures of the Federal Rules, a jury determines issues pertinent to an equitable cause without interruption or prejudice to the proceeding; the court decides whether equitable relief is called for on the basis of the jury's findings of fact.[11] The mere pres-

10. The court cited New York Life Ins. Co. v. Seymour, 6 Cir., 1930, 45 F.2d 47, 73 A.L.R. 1523, as an instance where a court of equity was allowed to enjoin a legal determination of a controversy. This case involved a life insurance policy containing a clause making the policy incontestable after two years. After the insured's death within the two-year period the beneficiary brought an action at law to recover on the policy. The insurance company then sued in equity for a declaration that the policy was invalid due to misrepresentations made by the insured. The beneficiary moved for dismissal of the equity suit arguing that the remedy at law was adequate, and the district court dismissed the suit. On appeal the dismissal was reversed. The court held that the remedy at law was not adequate since the plaintiff at law (the beneficiary) could take a voluntary non-suit after the incontestable period had passed and then initiate a new suit in which the defendant would be barred from asserting its defenses. The insurance company could therefore be irreparably harmed by allowing litigation of the dispute to proceed at law rather than at equity.

11. The opinion of the Supreme Court stated: "Inadequacy of remedy and irreparable harm are practical terms, however. As such their existence today must be determined, not be precedents decided under discarded procedures, but in the light of the remedies now made available by the Declaratory Judgment Act and the Federal Rules.

"Viewed in this manner, the use of discretion by the trial court under Rule 42(b) to deprive Beacon of a full jury trial on its counterclaim and cross-claim, as well as on Fox's plea for declaratory relief, cannot be justified. Under the Federal Rules the same court may try both legal and equitable causes in the same action. Fed.Rules Civ.Proc., 1, 2, 18. Thus any defenses, equitable or legal, Fox may have to charges of antitrust violations can be raised either in its suit for declaratory relief or in answer to Beacon's counterclaim. On proper showing, harassment by threats of other suits, or other suits actually brought, involving the issues being tried in this case, could be temporarily enjoined pending the outcome of this litigation. Whatever permanent injunctive relief Fox might be entitled to on the basis of the decision in this case could, of course, be given by the court after the jury renders its verdict. In this way the issues between these parties could be settled in one suit giving Beacon a full jury trial of every antitrust issue. Cf. Ring v. Spina, 2 [Cir.,] 166

ence of an equitable cause furnishes no justification for depriving a party to a legal action of his right to a jury trial.[12]

It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in Beacon Theatres. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. This is the teaching of Beacon Theatres, as we construe it.

On the record, there is no showing that the plaintiffs would suffer irreparable injury or that they have no adequate remedy at law. In the absence of these imperative prerequisites, we are compelled to hold that the district court abused its discretion in ordering an immediate and separate trial without a jury of the issues of the validity and infringement of the defendant's patents.[13]

The order appealed from is set aside and the case remanded for further proceedings not inconsistent with this opinion.

---

F.2d 546. By contrast, the holding of the court below while granting Fox no additional protection unless the avoidance of jury trial be considered as such, would compel Beacon to split his antitrust case, trying part to a judge and part to a jury." 359 U.S. at pages 507–508, 79 S.Ct. at page 955.

12. The court's holding in Beacon Theatres will sharply reduce the range of cases in which trial by court without jury may be held. Traditional law permits a suit at equity where the legal *remedy*, is inadequate, and under the standard interpretation of Rule 42(b) the presence of an equitable cause has supported submission to non-jury trial of issues pertinent to a legal cause. Beaunit Mills, Inc. v. Eday Fabrics Sales Corporation, 2 Cir., 1942, 124 F.2d 563. Now the equitable, non-jury procedure may be used in such cases only if use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim. That the Court envisaged a contraction of the instances justifying non-jury trial is further shown by its statement that "[s]ince * * * equity has always acted only

when legal remedies were inadequate, the expansion of adequate legal remedies provided by the Declaratory Judgment Act and the Federal Rules necessarily affects the scope of equity." 359 U.S. at page 509, 79 S.Ct. at page 956.

13. There are still some cases in which the trial judge may use his discretion. The Court said: "If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. * * * This longstanding principle of equity dictates that only under the most imperative circumstances, which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." 359 U.S. at 510–511, 79 S.Ct. at 956–957.