LYMAN T. HARADA, et al. *v.* EDWARD J.
BURNS, et al., and FLORENCE A. ELLIS, et al.

No. 4670.

SEPTEMBER 26, 1968.

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE
DOI ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY LEVINSON, J.

In a mortgage foreclosure action brought by the plaintiffs-appellees, the defendants-appellants counterclaimed for damages for breach of a partial release covenant in the mortgage. This appeal concerns the disposition of the counterclaim in the trial court.

The mortgage agreement contained the following partial release covenant:

AND the Mortgagees further covenant and agree with the Mortgagors (1) that they will on or after January 1, 1961, release from the lien of this mortgage any portion or portions of the mortgaged land upon written requests of the mortgagors according to the rate of one (1) acre for each $2,700.00 of the purchase price paid to the Mortgagors [sic], provided that no request for such partial releases will be made until a subdivision of the mortgaged land has received preliminary approval of the proper government officials of the County of Maui. . . .

The defendants had paid a total of $27,000 of the $78,000 purchase price by February 16, 1962. An additional $7,000 installment due on November 20, 1962 became delinquent, and the due date was subsequently extended by the plaintiffs-mortgagees until June 20, 1963. On June 13, 1963 and June 19, 1963, the defendants-mortgagors applied to the Maui authorities for approval of a ten-acre subdivision of the mortgaged property. Final approval for the subdivision was granted on July 5, 1963. There was no procedure for securing "preliminary approval," as called for by the partial release covenant.

On June 17, 1963, the defendants requested the partial release of the ten acres; the request was based on the $27,000 already paid.

On June 20, 1963, the $7,000 payment originally due on November 20, 1962 was still unpaid; there is a dispute as to whether a further extension until August 20, 1963 was granted by virtue of an interest payment made on June 17, 1963. However, for purposes of this opinion, we shall assume that the mortgagors were in default after June 20, 1963.

On June 25, 1963, the plaintiffs refused to grant the June 17 request for release because of the defendants' failure to obtain "preliminary approval" of the subdivision, and the plaintiffs threatened foreclosure proceedings because of the continuing delinquency. On July 9 the defendants were notified by the Maui county clerk of the July 5 final approval. It is unclear whether the plaintiffs also received notification at that time.

Meanwhile, the defendants had tentatively arranged with a loan source for the financing of the delinquent $7,000 payment. The loan was to be contingent upon the partial release of the ten acres, which would then be security for this prospective loan. On August 15, 1963, the plaintiffs were notified of this arrangement and were assured that the funds or a definite commitment for the funds would be available by August 20, 1963. On August 16 the plaintiffs responded by again informing the defendants of their refusal to release the ten acres, erroneously claiming that the subdivision approval had not been secured. On August 21, and on September 4, the defendants again requested the plaintiffs to release the acreage. On the latter occasion the defendants in-

formed the plaintiffs that the same source of funds might be willing to finance future installments under the mortgage, provided that the release was immediately forthcoming. Finally, on September 26, the plaintiffs executed the requested partial release.

The defendants claim that because of the delay in executing the release, the relations between the defendants and their loan source seriously deteriorated, and that because of this deterioration, the source rescinded all tentative commitments for additional funds. Subsequent to the release, the defendants made no payments under the mortgage and the plaintiffs brought an action to foreclose. The defendants counterclaimed for damages based on claims of disparagement of their business reputation and interference with their advantageous financial relationship with the loan source, all of which were alleged to have resulted from the plaintiffs' purported breach of contract in failing to execute the partial release promptly.

The trial court granted summary judgment on the plaintiffs' foreclosure complaint under H.R.C.P. 54 (b) , reserving jurisdiction over the counterclaim. The defendants had demanded a jury trial on their counterclaim, but the court struck this demand. Then on motion by the plaintiffs the court granted summary judgment in favor of the plaintiffs on the defendants' counterclaim with the court finding no genuine issue as to any material fact.

The defendants have appealed claiming that summary judgment against them on the counterclaim should not have been granted and that they have a right to a jury trial on the counterclaim. We agree and reverse on both issues.

## 1. *Summary Judgment*

In granting the motion for summary judgment, the trial court concluded as a matter of law that the "plaintiffs were not obligated to execute the requested release of mortgage until the defendants paid the installment of principal that had been due and payable on November 20, 1962." This was error.

In the absence of any words to the contrary found in the mortgage agreement itself, the right to enforce a partial release covenant does not terminate with default in the payments due under the mortgage. *Vawter* v. *Crafts*, 41 Minn. 14, 42 N.W. 483 (1889) ; *Turner* v. *Schuh*, 297 Ill. App. 317, 17 N.E.2d 517 (1938) ; *Conley* v. *Poway Land & Investment Co.*, 42 Cal. Rptr. 636 (D.C.A. 1965) . We believe that the reasons behind this position are compelling.

Contrary to the plaintiffs' contention, we infer from the fact of there being no express provision making the release covenant unenforceable upon default that the covenant is unconditional except for the "written request" and "preliminary approval" requirements. There is nothing in the nature of the covenant that makes it conditional upon any other covenant in the agreement.

There is no injustice done to the plaintiffs from this construction of the instrument since the remaining security would be equally as sufficient as it would have been if the release had been demanded before default. There is no damage suffered since all the parties will receive what they bargained for in the agreement.

Furthermore, the very existence of the release clause in the mortgage agreement supports the inference that its purpose was to facilitate the sale and conveyance of clear title to parcels of the land subject to the mortgage in order to generate funds which could be used to reduce the remaining indebtedness The construction advocated by the plaintiffs derogates from this apparent purpose.

The affidavits filed by the parties show that there are disputed factual issues which must be decided at a trial on the merits. For example, there is a question as to whether the plaintiffs did in fact fail to comply with the partial release covenant, a determination which depends in part upon finding that there was an unreasonable delay in executing the release. Likewise, there is a factual dispute relating to the existence of actual damages, which, of course, the defendants must prove. The aforementioned disputed facts are not intended to be exhaustive. They serve, however, to indicate that there must be a trial on the

merits of the defendants' counterclaim, rather than a disposition by way of summary judgment.

## 2. *Trial by Jury*

The Constitution of Hawaii, article I, section 10 provides: "In suits at common law where the value in controversy shall exceed one hundred dollars, the right of trial by jury shall be preserved." The origin of this section is the seventh amendment of the United States Constitution which provides for jury trials for common law actions involving more than twenty dollars. Rule 38(a) of the Hawaii Rules of Civil Procedure provides that "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States or the Territory shall be preserved to the parties inviolate." This rule, adopted in 1953, was taken verbatim from the Federal Rules of Civil Procedure 38(a) except for the addition of the words "or the Territory." R.L.H. 1955, § 231-6 provides that "Either party to a civil action may demand a trial by jury by a written document filed in court within ten days after the case is at issue. . . ."

The seventh amendment jury trial requirement is not binding upon the states. Bartholomew, *The Gitlow Doctrine Brought Down to Date, II,* 54 A.B.A.J. 785, 787 (1968) . *See, e.g., Pearson* v. *Yewdall,* 95 U.S. 294 (1877) . The decision in the instant case, therefore, rests on the interpretation of the Constitution of Hawaii, its statutes, and its rules of procedure. However, since the Hawaii constitutional provision and rule of procedure were patterned after the Federal Constitution and Rules, the interpretation of those provisions by the federal courts are deemed to be highly persuasive in the reasoning of this court.[1] The provisions found in the federal and Hawaii constitutions preserving the right to a jury trial in common law actions do not extend to

---

[1]The deliberations of the Constitutional Convention delegates clearly indicate that the language of article I, section 10 "preserved" the language of the United States Constitution in order to "preserve" also the judicial interpretation. *Proceedings of the Constitutional Convention of Hawaii,* vol. II at 39 (1950) (remarks of delegate Anthony) .

suits of an equitable nature. 5 Moore, *Federal Practice* § 38.11[2] (2d ed. 1968), *Proceedings of the Constitutional Convention of Hawaii,* vol. II at 36-37 (1950) (remarks of delegate Anthony). Uncertainty in the determination of jury trial rights developed in the federal bar upon the adoption of the Federal Rules, whose broad provisions permitted and sometimes required the mixture of equitable and legal claims in a single case. *Thermo-Stitch, Inc.* v. *Chemi-Cord Processing Corp.,* 294 F.2d 486, 488 (5th Cir. 1961). Rules 13 and 18(a) of the Hawaii Rules of Civil Procedure embody similarly broad joinder provisions. The instant case involves such a blending of claims.

This court has held that the constitutional guarantee of a jury trial in a civil action does not extend to legal issues which arise in a suit of an equitable nature. *Honolulu Savings & Loan Co.* v. *Ing,* 40 Haw. 269, 273 (1953). But this court has never before faced the question whether a legal counterclaim filed in an equity action may require a jury trial if the demand is timely made. Today we have that question before us.

In this suit we are dealing with a permissive counterclaim, not a compulsory one. Rule 13(a) of the Hawaii Rules of Civil Procedure requires four conditions to be met for a counterclaim to be compulsory. One of them is that "the claims consist of a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation." Since the defendants in this action are suing for a claim of an unliquidated nature, their counterclaim cannot be deemed to be compulsory. Rather, the counterclaim must be viewed as permissive under Rule 13(b) which provides that "A pleading may state as a counterclaim any claim against an opposing party which is not a compulsory counterclaim as described in subdivision (a) of this rule."

In the absence of any statute or rule of procedure to the contrary, the traditional approach of other states facing this question has been that the plaintiff's complaint determines the nature of the proceeding; *i.e.,* when a court of equity asserts jurisdiction over an equitable action, it may decide without a jury all the issues raised, both equitable and legal, including those raised by a permissive legal counterclaim. *Fogelstrom* v.

*Murphy,* 70 Idaho 488, 222 P.2d 1080 (1950). Some courts have denied jury rights to the permissive counterclaimant on the ground that he has waived those rights by coming into equity with the counterclaim, *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 33 A.2d 126 (1943). Other state courts have gone even further by denying a jury trial for legal issues raised by a compulsory counterclaim, which, by its nature, could not have been brought independently. *Miller* v. *District Court,* 154 Colo. 125, 388 P.2d 763 (1964).

The federal courts construing the seventh amendment of the United States Constitution in conjunction with the Federal Rules have been much more kindly disposed toward the demand for a jury trial of a defendant who has filed a compulsory legal counterclaim in an equity action. Because of the compulsory nature of the counterclaim and the fact that it could not thereafter be independently asserted, the older federal decisions under the Federal Rules of Civil Procedure held that after the disposition of the equity claim, there should be a jury trial for the remaining legal issues raised by the counterclaimant. *Bendix Aviation Corp.* v. *Glass,* 81 F. Supp. 645 (E.D. Pa. 1948). Some state courts have also held that the right to a jury trial extends to the compulsory counterclaimant. *Hightower* v. *Bigoney,* 156 So.2d 501, 17 A.L.R. 3d 1308 (Fla. Sup. Ct. 1963).

Recent federal litigation arose because of the practice of trying without a jury issues common to both an equitable claim and a legal counterclaim during that portion of the trial relating to the equitable claim and prior to considering the legal counterclaim. The result was that collateral estoppel precluded a later jury trial on those same issues when the legal counterclaim was being tried. The leading case is *Beacon Theatres* v. *Westover,* 359 U.S. 500 (1959) in which the Supreme Court granted a writ of mandamus directing the district court to try by jury all the issues raised by the defendant's counterclaim before trying the equitable action.

In its opinion, the Court uses very broad language:

If there should be cases where the . . . joinder in one suit of legal and equitable causes would not in all respects protect

the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial. . . . [O]nly under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims. (359 U.S. at 510-511).

Despite the fact that the counterclaim in the *Beacon Theatres* case was compulsory under the Federal Rules, the language seems to include within its sweep the preservation of the right to a jury trial on the issues raised by all legal counterclaims whether permissive or compulsory.

If there was any lingering doubt concerning the all-encompassing scope of the language, it would seem to have been cleared up by a subsequent case in the Supreme Court wherein the Court in explaining the *Beacon* decision said:

The holding in Beacon Theatres was that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances . . . can the right to a jury trial of the legal issues be lost through prior determination of equitable claims." *Dairy Queen* v. *Wood,* 369 U.S. 469, 472 (1962).

The broad language of the Supreme Court has been adopted and applied by the United States Courts of Appeal without qualification: ". . . by virtue of the Seventh Amendment, neither party waives the right to a jury trial of a legal claim by asserting it as a counterclaim to an equitable claim." *Thermo-Stitch, Inc.* v. *Chemi-Cord Processing Corp.,* 294 F.2d 486, 488 (5th Cir. 1961).

Some commentators take the position that under the Federal Rules it is clear that the filing of a counterclaim—either per-

missive or compulsory—does not constitute a waiver of a jury trial.[2] However, we have found no case, in the absence of a statute expressly providing for a jury trial of those legal issues involved, wherein the facts indicate clearly that a defendant asserting a permissive legal counterclaim was entitled to a jury trial on the counterclaim when it was interposed in an equity suit. We believe the reasons are almost as compelling to permit a jury trial in the instant case as they are in the case of the compulsory counterclaim.

If under the reasoning of the *Beacon Theatres* case, any common issue as between the equitable claim and *any* legal claim is to be determined first by a jury in order to preserve the right to a jury trial as to that legal issue, then *a fortiori* if the issues are not common, the legal issues should be determined by a jury and not be foreclosed by a determination of the judge on those issues.

Also it is clear that one purpose of the Federal and Hawaii Rules of Civil Procedure is to have one cause of action (see Rules 1 and 2) and to resolve all claims as between the parties in one suit (see Rule 13). It matters not whether the issues are legal and/or equitable. The object of the simplified system is to reduce the number of suits between the parties and to eradicate as much as possible the ancient distinctions between legal and equitable claims. By requiring the permissive counterclaimant to file another lawsuit in order to have a jury determination of the legal issues, as the plaintiff asserts should be the rule in the instant case, it would tend to increase the multiplicity of suits. It would also tend to perpetuate practices required under the old divided system.

Reversed and remanded.

*William S. Ellis, Jr.,* Appellant pro se.

*Ralph E. Corey* for Appellants Except William S. Ellis, Jr.

*William F. Crockett (Crockett and Langa* of counsel) for Plaintiffs-Appellees.

---

[2] James, *Right to a Jury Trial in Civil Actions,* 72 Yale L.J. 655 at 684 (1963) ; 5 Moore, *Federal Practice* § 38.14 (2d ed. 1968) ; 1A Barron & Holtzoff, *Federal Practice and Procedure* § 405 (Wright ed. 1960) .