ASSOCIATION OF APARTMENT OWNERS OF THE MAGEL-
LAN, an unincorporated condominium association, by its Board of
Directors, Plaintiff-Appellee/Cross-Appellant, *v.* JOAN
SEQUITO and JOSEPH SEQUITO, Defendants-Appellants/
Cross-Appellees

NO. 10812

(CIVIL NO. 68510)

MAY 12, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendants Joan and Joseph Sequito (Sequitos) appeal (1) the
December 11, 1984 order striking their demand for a jury trial and (2)
the July 9, 1985 permanent injunction restraining them from conducting
a baby-sitting business "in Apartment No. 407 or anywhere on the
Magellan condominium premises." The permanent injunction was
based on the trial court's decision that the Sequitos' baby-sitting busi-
ness violated a provision of the By-Laws prohibiting unreasonable
interferences with the rights of the other apartment owners.

Plaintiff Association of Apartment Owners of the Magellan (the
Magellan) cross-appeals the lower court's refusal (1) to declare the
Sequitos' baby-sitting business as being absolutely prohibited by the

Magellan's Declaration and By-Laws and (2) to award it fines of $10 per day from November 1, 1980 to July 9, 1985, the date of the judgment.

The dispositive issue is whether the lower court reversibly erred in denying the Sequitos' demand for a jury trial. Our answer is yes, except with respect to the equitable issue of whether the Magellan was entitled to a permanent injunction. It is inappropriate for us to answer any of the substantive issues at this stage of the proceedings and therefore we do not.

The Sequitos are the owners and occupants of Apartment 407 in the 74-unit Magellan condominium apartment building. Since 1971, the Sequitos have conducted a "babysitting business" in their Magellan apartment. Mrs. Sequito was a family day care provider licensed by the State Department of Social Services and Housing.[1] She provided "care to up to five children at a time."[2]

On January 19, 1981 the Magellan's Board of Directors voted to levy a "fine" of $10 per day against the Sequitos commencing November 1, 1980 for their alleged continuing violation of the applicable restrictions.[3] Thereafter, the Magellan sued the Sequitos to enjoin their baby-sitting activities and for unspecified damages. The Sequitos demanded a jury trial on "all issues." On March 7, 1984 the Magellan filed an

---

[1] See Act 208, 1985 Haw. Sess. Laws 359 which amended chapter 346, Hawaii Revised Statutes (HRS), effective July 1, 1985.

[2] The Sequitos' apartment is a "dwelling unit" as defined in Sec. 21-1.10, Revised Ordinances of Honolulu (1978) (1983 edition). A "dwelling unit" is "for a family[.]" A "family" is "one or more persons, all related by blood, adoption, or marriage" plus "domestic servants employed only on the premises[.]" In lieu of a family and domestic servants, "no more than five unrelated persons may occupy a dwelling or lodging unit." The ordinance does not say how many unrelated persons may occupy a dwelling together with a family and domestic servants.

[3] On May 28, 1983 HRS § 514A-82(23) (Supp. 1984) became law. It was renumbered § 514A-82(22) by Act 212, § 2, 1985 Haw. Sess. Laws 380, 382-83. It provides as follows:
Content of bylaws. The bylaws shall provide for at least the following.

* * *

(22) Penalties chargeable against persons for violation of the covenants, conditions, or restrictions set forth in the declaration, or of the bylaws and administrative rules adopted pursuant thereto, method of determination of violations, and manner of enforcing such penalties, if any.

amended complaint in which it identified the $10 per day "fine" as "damages."

Concluding that the entire case was of an equitable nature, the trial court on December 11, 1984 granted the Magellan's October 26, 1984 motion to strike the Sequitos' demand for jury trial. In our view, this was error.

HRS § 514A-88 (Supp. 1984) provides:

Compliance with covenants, bylaws, and administrative provisions. Each apartment owner, tenants and employees of an owner, and other persons using the property shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions, and restrictions set forth in the declaration. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief, or both, maintainable by the manager or board of directors on behalf of the association of apartment owners or, in a proper case, by an aggrieved apartment owner.

The Magellan's Declaration of Horizontal Property Regime (Declaration) provides in relevant part as follows:

D. *USE.* The apartments shall be occupied and used only as private dwellings by the respective owners thereof, their tenants, families, domestic servants and social guests, and for no other purpose. The apartments shall not be rented for transient or hotel purposes, which are defined as (a) rental for any period less than 15 days, or (b) any rental in which the occupants of the apartments are provided customary hotel services such as room service for food and beverage, maid service, laundry and linen or bellboy service. Except for such transient or hotel purposes the owners of the respective apartments shall have the right to assign, sublease or rent such apartments subject to all provisions of this Declaration.

The Magellan's By-Laws provide in relevant part as follows:

*ARTICLE VII*
Use and Maintenance of Premises
Section 1.   *Use of Premises.*

\* \* \*

(b) The owner of each apartment except Apartment 301 shall

use such apartment only as a living accommodation or dwelling purpose and the same will not be used in a manner which will injure the reputation of the premises or building or which will unreasonably interfere with the rights of other owners. * * *

### ARTICLE X
Miscellaneous Provisions

* * *

Section 8. *PENALTY FOR VIOLATION OF COVENANTS.* If, in the opinion of the Board, any owner or renter or lessee of an owner fails to comply with any provision of these By-Laws calling for something other than the payment of money, and providing such failure is not in the nature of a breach of the peace, a common nuisance or a noxious or offensive activity of annoyance to the owners, the Board shall give the owner written notice of such non-compliance and shall allow said owner 30 days in which to comply, or to see that his renter or lessee complies, and if such non-compliance continues after the expiration of said 30 day period, the Board shall have the discretion to assess against such owner, commencing with the 31st day, a penalty assessment of Ten Dollars ($10) for each day or fraction thereof during which such violation shall continue and such assessment shall be treated as a special assessment against such defaulting owner. If such failure is in the nature of a breach of the peace, a common nuisance or a noxious or offensive activity of annoyance to the owners, the Board is authorized to seek and obtain immediate legal relief at the expense of such owner. Nothing herein contained shall be deemed to prejudice or in any other way limit or restrict the powers of the Board as stated elsewhere in these By-Laws.

The facts indicate that the Sequitos' baby-sitting business involved (1) receiving payment for (2) the occupancy of the apartment and the apartment building by the children each workday and (3) the care and close supervision of the children by the Sequitos each workday (i) in and (ii) out of the apartment and the apartment building.

At trial, the question was whether one or more phases of the Sequitos' baby-sitting business materially violated one or more of the requirements that the Magellan apartments be used (a) only as private dwellings; (b) only by their owners and their owners' tenants, families,

domestic servants, and social guests; and (c) so as not to unreasonably interfere with the rights of the other owners.

On July 9, 1985 the lower court decided as follows: (1) The Sequitos' baby-sitting business is "incidental to the use of Apartment No. 407 for dwelling purposes" and therefore is permissible; (2) "[T]he degree of parking and traffic problems created by parents delivering their children to the Sequitos, and the amount of noise created by those children, does not per se constitute an unreasonable interference with the rights of other owners"; (3) "[T]he increased potential for liability to Plaintiff ASSOCIATION created by Defendants Sequitos' babysitting business together with the noise and parking and traffic problems created by such activity constitute an unreasonable interference with the rights of other owners at the Magellan"; and (4) The Magellan "is not awarded its request for the fines[.]"

The Magellan asserted an equiable (injunction) claim and a legal (special penalty assessment) claim. The Sequitos demanded a jury trial on "all issues."

The federal rule is as follows:

The Supreme Court has now made it wholly clear that a claim that would otherwise be triable to a jury must be so tried even though it may be thought "incidental" to a claim for an injunction. The order of trial must be arranged so that any issues common to the legal claim and the claim for an injunction are tried to a jury at the outset, with the court thereafter resolving any purely equitable issues in the case.

9 Wright & Miller, Federal Practice and Procedure: *Civil* § 2308 (1971) (footnotes omitted). This is also the Hawaii rule. *Harada v. Burns,* 50 Haw. 528, 445 P.2d 376 (1968).

Our conclusion is consistent with the holding in *Honolulu Savings & Loan Co. v. Ing,* 40 Haw. 269 (1953), cited by the Magellan. The *Honolulu Savings & Loan Co.* case involved only one equitable (mortgage foreclosure) claim. Therefore, there was no right to a jury trial. *Harada* involved an equitable (mortgage foreclosure) claim and a legal (damages) counterclaim. This case involved an equitable (injunction) claim and a legal (special penalty assessment) claim. Therefore, in *Harada* and in this case, there was a right to a jury trial on the issues involved in the legal claim and the legal counterclaim.

The material elements of the Magellan's claim for injunctive relief were as follows: (1) The Sequitos were conducting a baby-sitting busi-

ness in Apartment 407; (2) The baby-sitting business constituted a failure to comply with the Magellan's By-Laws; (3) The failure to comply was a material noncompliance; and (4) The Sequitos' material noncompliance entitled the Magellan to injunctive relief.

The first three material elements of the Magellan's claim for a monetary award of the "fines" are the same as the first three material elements of its claim for injunctive relief. Only material element 4 differed. With respect to the claim for a monetary award, element (4) was as follows: The Magellan's Board (i) complied with the procedural requirements outlined in Article X, Section 8, of the By-Laws; (ii) assessed a special (penalty) assessment of $10.00 per day or fraction thereof; and (iii) the assessment has not been paid.

The Sequitos were entitled to have a jury decide the disputed factual questions involved in the Magellan's claim for a monetary award of the "fines" and have the court hold off its decision on the Magellan's request for a permanent injunction until the jury decided the disputed factual questions common to both claims.

Accordingly, we reverse the part of the December 11, 1984 order that grants the Magellan's October 26, 1984 motion to strike the Sequitos' demand for jury trial as to the issues involved in the Magellan's legal claim and to the issues involved in its equitable claim that are common to the issues involved in its legal claim. We affirm the part of the December 11, 1984 order that grants the Magellan's October 26, 1984 motion to srike the Sequitos' demand for jury trial as to the issues involved in the Magellan's equitable claim that are not common to the issues involved in its legal claim. We vacate the July 9, 1985 Findings of Fact; Conclusions of Law; Judgment for Permanent Injunction and remand the case for further proceedings consistent with this opinion.

*Arthur B. Reinwald* (*Robert G. Campbell* with him on the opening brief; *Hoddick, Reinwald, O'Connor & Marrack* of counsel) for appellants/cross-appellees.

*Philip L. Lahne* (*Gail C. Nakatani* with him on the briefs; *Dinman, Nakamura, Elisha & Nakatani* of counsel) for appellee/cross-appellant.