**ENTERPRISE PROPERTIES INCORPORATED, Plaintiff**

v.

**HILLS DEVELOPMENT CORPORATION and W.O.F. CORPORATION, Defendants**

Civil No. 28-1973

District Court of the Virgin Islands

Div. of St. Croix

November 30, 1973

MERWIN, ALEXANDER & O'BRIEN, ESQS., Christiansted, St. Croix, V.I., *for plaintiff*

ROBERT H. RUSKIN, ESQ., Christiansted, St. Croix, V.I., *for defendants*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

This action concerns a promissory note and purchase money mortgage delivered to defendants by plaintiff as partial consideration for the purchase of certain real property located in Estate LaGrange and Frederikshaab, West End Quarter, St. Croix. The principal controversy relates to provisions in the mortgage indenture and a subsequent modification thereof under which plaintiff is entitled to obtain partial releases from the lien of the mortgage upon making payments against the principal of the mortgage debt. In December of 1972, plaintiff delivered to defendants an instrument of partial release for their execution, but defendants refused to execute the proposed partial release for various reasons, but primarily on grounds that additional information and study would be required to deter-

mine whether the collateral value of the mortgaged property would unreasonably be diminished. The next installment of principal (due on January 1, 1973) then became due. Plaintiff, however, did not pay this to defendants in cash, but instead, filed a letter of credit with the Clerk of Court at the time that this action was commenced.

I now have before me motions for summary judgment by both plaintiff and defendants, together with a motion by plaintiff to compel defendants to execute a partial release of a Notice of Lis Pendens recorded against all the real property owned by plaintiff. Before addressing the merits of these motions, it will be helpful to review the pleadings in the case. Plaintiff commenced this action seeking the following relief:

(1) Specific performance of the partial mortgage release obligation as requested in December, 1972;

(2) A Declaratory Judgment that defendants' failure to execute the proposed release was a substantial and material breach discharging plaintiff from its obligation on the note and mortgage;

(3) A Declaratory Judgment that defendants have no legal right to declare plaintiff in default for failure to pay principal installments subsequent to defendants' improper denial of the request for partial releases; and

(4) Damages for harm to plaintiff's financing and refinancing arrangements due to defendants' failure to execute the partial releases when and as requested.

Defendants asserted as affirmative defenses that plaintiff intends to default on the note after securing a release of the most valuable areas of the mortgage property and that plaintiff failed to comply with certain conditions which must be met before a release can be executed. Defendants also counterclaimed as follows:

(1) For a judgment that the entire unpaid balance of principal and interest is due and payable immediately

because of plaintiff's failure to pay the principal install-
ment due July 1, 1973; and

(2) For a declaration that a second mortgage obtained
by plaintiff is null and void.

Although the actions of the parties since December,
1972, have resulted in a lawsuit involving many claims, it
appears that the underlying issue, which caused all the
others to arise, is a simple question of contract interpre-
tation. The mortgage as modified on June 30, 1972, con-
tained the following provision on releases:

3. *Releases.* That it is a condition of this mortgage that upon
the delivery of this mortgage, or at any time thereafter, and with-
out any additional principal payments therefor, Mortgagees will
release from the lien of this mortgage, Plots Nos. 151 through 186,
and Remainder of 1-E of Estate LaGrange, West End Quarter,
as the same more particularly appear on P.W.D. Drawing, Page
1689, of September 28, 1964.

Provided that the Mortgagor is not in default, it shall thereafter
be entitled to releases from the lien of mortgage as follows:

(a) Should Mortgagor elect to have released land located
within Plot No. 2-B and Remainder of Plot No. 1, of Estate
LaGrange, such land shall be released from the lien hereof at the
rate of one acre, or fraction thereof, for every Fifteen Thousand
Dollars ($15,000.00), or proportionate fraction thereof, paid
against the principal of the mortgage debt.

(b) Should Mortgagor elect to have released land at any
other location upon the mortgaged property, such land shall be
released from the lien hereof at the rate of one acre, or fraction
thereof, for every Ten Thousand Dollars ($10,000.00), or pro-
portionate fraction thereof, paid against the principal of the
mortgage debt.

(c) Land to be released shall be released from time to time
at any location or locations upon the entire mortgaged property,
and no land released need be contiguous to any land theretofore re-
leased pursuant to the provisions hereof.

(d) Payments against the principal of the mortgage debt shall
entitle the Mortgagor to partial releases, and payments for partial
releases shall apply to the next due principal installment.

(e) All land released shall be described according to a survey or surveys, which survey or surveys shall be prepared at no cost to Mortgagees.

All releases from the lien of the mortgage shall retain in favor of lands not so released an easement over all existing or future roads and rights-of-way surveyed out of the property, and shall also retain in favor of lands not so released an easement for ingress and egress to a width of thirty feet (30') if necessary and at a reasonable location, over the lands released from the lien hereof.

This modification replaced in toto the original provision on releases in the mortgage indenture and is now the governing agreement on that subject. The only significant alteration in the original provision was the elimination of the contiguity requirement—that subsequent released land be contiguous to land already released.

It is this modification of the release provision, then, that must govern my determination whether plaintiff was entitled to the partial releases requested in December, 1972. From my reading of the provision, I must conclude that it was so entitled. Subsection (d) of the Release Section reads that "Payments against the principal of the mortgage debt shall entitle the mortgagor to partial releases" and the rates at which various segments of the mortgaged property will be released are specified in subsections (b) and (c). By December, 1972 plaintiff had paid over $200,000 of the principal debt and was entitled to partial releases in accordance with the section. Defendants' argument that the modification in 1972 wiped out all of plaintiff's vested release rights for principal payments made before that date is totally unfounded. See Turner v. Schuh, 17 N.E.2d 517 (Ill. App. 1938) (privilege of obtaining partial release was not waived by failure to demand partial release simultaneously with part payment; right became fixed). While the elimination of the contiguity requirement is not insignificant, it cannot be seriously suggested that plaintiff (or anyone else) would give up valuable ac-

crued release rights entitling plaintiff to about thirteen acres free from the mortgage lien to be subdivided from the more valuable areas of Plots 2-B and Remainder Plot 1, or about 20 acres from other areas of the mortgaged property merely to remove the contiguity requirement. But I need not decide if such an incredible bargain could be enforced by this Court because the language of the release section simply does not support defendants' interpretation. If the parties had intended such a drastic change in their rights, they could have clearly stated that intention and drafted the modification accordingly. See Moore v. Stevens Coal Co., 173 A. 661 (Pa. 1934) (Court cannot assume contract's language was carelessly chosen).

■ At this point, I am faced with defendants' argument that, despite my conclusion from reading the language of the provision, summary judgment would be inappropriate and the intention of the parties should be explored with the aid of parol evidence at a trial on the merits. I cannot agree with this conclusion. It is a well recognized principle of contract law that where an agreement is clear and unambiguous, it is not open to judicial construction. St. Paul Mercury Ins. Co. v. Price, 329 F.2d 687 (5th Cir. 1964); Chemical Const. Corp. v. Continental Engineering, Ltd., 407 F.2d 989 (5th Cir. 1969). Because this release provision is unambiguous and contains the parties' integrated agreement, it would be impermissible to accept parol evidence to vary its terms. Williston on Contracts 3d Ed. § 631; Restatement of Contracts § 237; Dunlop Tire and Rubber Corp. v. Thompson, 273 F.2d 396 (8th Cir. 1959); Trussel v. Land, 138 So. 910, 911 (Lo. 1932) (mortgage is governed by same rules of construction and interpretation that apply to written instruments generally). I must enforce the agreement reached by the parties and, by its clear terms, plaintiff is entitled to specific performance of the release obligations. See Simon v.

New Hampshire Sav. Bank, 296 A.2d 913 (N.H. 1972); Lewis v. Dils Motor Co., 135 S.E.2d 597 (W. Va. 1964).

Having settled the primary dispute, the remaining claims can be dealt with quite easily. I need not rule on plaintiff's second request for relief (declaratory judgment that its obligations on the note and mortgage were discharged by defendants' actions) because plaintiff has indicated that it does not seek to repudiate the agreement and is willing to go forward with its obligations, once the partial releases are obtained. As for plaintiff's requested declaratory judgment that defendants have no right to declare it in default and foreclose on the mortgage, I conclude that summary judgment is appropriate.

■ Defendants argue that the failure to pay the July, 1973 principal installment to them is a default warranting foreclosure. However, the failure, when viewed in light of the circumstances, is excusable. First, it should be noted that plaintiff immediately filed with this Court a letter of credit covering the January, 1973 principal installment. This indication of willingness to perform its obligations, despite defendants' wrongful refusal to execute a release is significant. A similar deposit was not made in July, 1973 but, it was argued, and I so find, that such deposit was not made because of defendants' continued refusal to execute partial releases of property from the mortgage lien. Where the failure of a party to a contract to complete his obligations on time is the fault of the other party, the failure is not a breach, and performance is excused. See Rainier v. Champion Container Co., 294 F.2d 96, 103 (3d Cir. 1961); Chamberlain v. Booth, 70 S.E. 569 (Ga. 1911); Schneider v. Saul, 168 A.2d 375 (Md. 1961). Therefore, plaintiff is entitled to a declaratory judgment that defendants have no right to foreclose on the mortgage because of the failure to pay the July 1, 1973 installment. Once the release is executed by defendants, however, the excuse for

nonpayment of the principal installment will be removed and plaintiff will again be required to perform its obligations.

The fourth and final element of relief sought by plaintiff (damages for the harm caused by defendants' refusals) cannot be dealt with by summary judgment. The extent of the damage and the right to recover for it are matters remaining for trial.

Turning to defendants' counterclaims, it follows from this discussion that plaintiff is not in default and defendants are not entitled to declare the entire balance of the principal sum immediately due and payable. The second counterclaim which alleges that a second mortgage acquired by plaintiff was created solely to defraud creditors and should therefore be declared invalid cannot be disposed of on a motion for summary judgment. There remain material issues of fact as to the motivations of plaintiff which must be explored at a trial on the merits.

The final question before the Court is whether plaintiff is entitled to a partial release of a lis pendens filed by defendants. I have determined that it clearly is. The lis pendens filed applies to all the property originally subject to the mortgage and fails to delete from the description certain portions of the land which were released from the lien by a previously issued partial release. As this lawsuit could not affect title to previously released property, the lis pendens should not include it. See Flanigan v. Clark, 11 P.2d 176 (Okl. 1932); Machover v. Abdallah, 329 F.2d 800, 803 (3d Cir. 1964) (doctrine of lis pendens applies to property which is the subject of the litigation); Grabowski v. S & E Const. Co., 177 A.2d 576 (N.J. Super. 1962). This remedy has been too often abused by attorneys and cannot be allowed to become an informal, inexpensive alternative to attachment.

## JUDGMENT

For the reasons stated in the above Memorandum Opinion, it is hereby ADJUDGED, ORDERED and DECREED:

(1) That defendants shall forthwith execute and deliver to plaintiff the requested instrument of partial release in accordance with the provisions of the modified mortgage;

(2) That, until thirty (30) days after execution of the release, defendants have no legal right to declare plaintiff in default for failure to pay the July 1, 1973 principal installment on the mortgage;

(3) That defendants shall release the lis pendens insofar as it presently includes property previously released from the mortgage lien;

(4) That plaintiff and defendants' motions for summary judgment in all other respects be DENIED;

(5) That the action go forward for a trial on plaintiff's claim for damages and defendants' claim for nullification of the second mortgage lien; and

(6) That plaintiff is entitled to costs incurred to date, including an award of interim attorney's fees. Plaintiff shall submit a bill of costs and its time records in support of such award.