Dianne CASTANO, et al.

v.

The AMERICAN TOBACCO COMPANY, et al.

Civ. A. No. 94–1044.

United States District Court, E.D. Louisiana.

Feb. 17, 1995.

Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, LA, Joseph M. Bruno, Bruno & Bruno, New Orleans, LA, Wells Talbot Watson, Baggett, McCall & Burgess, Lake Charles, LA, Russ M. Herman, Herman, Herman, Katz & Cotlar, New Orleans, LA, Calvin Clifford Fayard, Jr., Donna Unkel Grodner, Fayard, Harris & Honeycutt, Den-

ham Springs, LA, Michael X. St. Martin, St. Martin, Lirette, Shea, Watkins & McNabb, Houma, LA, George Febiger Riess, Monroe & Lemann, Robert L. Redfearn, Simon, Peragine, Smith & Redfearn, New Orleans, LA, Daniel G. Abel, Wendell H. Gauthier, Dana Kim Cormier, Gauthier & Murphy, Metairie, LA, Edwin Rene Murray, Edwin R. Murray & Associates, Kenneth Michael Carter, Carter & Cates, Peter Joseph Butler, Peter J. Butler, Jr., Locke, Purnell, Rain & Harrell, P.C., New Orleans, LA, Elizabeth J. Cabraser, Richard M. Heimann, Robert Lieff, Lieff, Cabraser & Heimann, San Francisco, CA, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, John (Jack) Brown Baldwin, Scott Baldwin, Baldwin & Baldwin, Marshall, TX, Bettye Anne Barrios, Johnson, Johnson, Barrios & Yacoubian, John Bologna Krentel, New Orleans, LA, Louie J. Roussel, III, Metairie, LA, Bruce C. Dean, New Orleans, LA, Perry Weitz, New York City, Melvin Belli, San Francisco, CA, Margaret Moses Branch, Turner Branch, Branch Law Firm, Albuquerque, NM, John P. Coale, Coale, Allen & Van Susteren, Washington, DC, Ralph Irving Knowles, Jr., Kenneth S. Canfield, Doffermyre, Shields, Canfield & Knowles, Atlanta, GA, Andrew W. Hutton, Mark B. Hutton, Michaud, Hutton & Bradshaw, Wichita, KS, Richard Alexander, The Alexander Firm, San Jose, CA, Stanley M. Chesley, Sherrill P. Hondorf, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Gayle L. Troutwine, Jeffrey S. Merrick, Williams & Troutwine, Portland, OR, Robert D. Greenbaum, Myles H. Malman, Kohn, Nast & Graf, John P. Kopesky, Sheller, Ludwig & Badey, Philadelphia, PA, Michael L. Williams, Williams & Troutwine, Portland, OR, Stephen Barnett Murray, Murray Law Firm, New Orleans, LA, Richard A. Daymard, Boston, MA, Jodi W. Flowers, Susan Nial, Charles W. Patrick, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, Francis H. Hare, Jr., Attorneys Information Exchange Group, Inc., Birmingham, AL, Ronald L. Motley, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, John R. Climaco, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, for Dianne Castano, Ernest Perry & George Solomon.

Robert E. Winn, Joy Goldberg Braun, Sessions & Fishman, New Orleans, LA, Bruce G. Sheffler, Chadbourne & Parke, New York City, for defendant American Tobacco Co.

Steven W. Copley, John Mason McCollam, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, for defendant Lorillard Inc.

John Mason McCollam, Gordon, Arata, McCollom & Duplantis, New Orleans, LA, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co.

Charles Fenner Gay, Jr., Scott Edward Delacroix, Thomas J. Wyllie, Adams & Reese, New Orleans, LA, Gary R. Long, Allen Rennie Purvis, Shook, Hardy & Bacon, Kansas City, MO, for Phillip Morris Inc.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for RJR Nabisco Inc.

Stephen H. Kupperman, Phillip A. Wittmann, S. Ann Saucer, Stone, Pigman, Walther, Wittmann & Hutchinson, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, Theodore M. Grossman, Paul G. Crist, Hugh R. Whiting, Mark A. Belasic, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Co.

John Jerome Weigel, Joseph Jacob Lowenthal, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, James V. Kearney, Francis K. Decker, Jr., Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Liggett Group Inc., Brooke Group Ltd., defendants.

Charles L. Chassaignac, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for Reynolds R.J. Tobacco Co., Inc., Batus Holdings Inc., Batus Inc.

Robert E. Winn, Sessions & Fishman, New Orleans, LA, for American Brands Inc.

Charles W. Schmidt, III, Christovich & Kearney, New Orleans, LA, for U.S. Tobacco Co., UST Inc.

Alan Harry Goodman, Thomas Mente Benjamin, Lemle & Kelleher, New Orleans, LA, for The Tobacco Institute, Inc.

Steven W. Copley, John Mason McCollam, Gordon, Arata, McCollam & Duplantis, New Orleans, LA, for Loews Corp.

Suzanne V. Foulds, pro se.

Charles L. Chassaignac, Peter A. Feringa, Jr., Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, Griffin B. Bell, King & Spaulding, Atlanta, GA, for Brown & Williamson Tobacco Corp.

Robert H. Walker, pro se.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is plaintiffs' Motion for Class Certification. Having heard the oral arguments of the parties and having reviewed the briefs, the applicable law and the record, the plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiffs initially filed this "Class Action Complaint" on March 29, 1993 (R.Doc. 1) and filed a "First Amended Class Action Complaint" on May 9, 1993. (R.Doc. 36.) Plaintiffs Ernest R. Perry Sr. and T. George Solomon Jr. are cigarette smokers. Plaintiff Dianne A. Castano is the widow of Peter Castano, who allegedly was a cigarette smoker. Defendants are various tobacco companies [1] as well as the Tobacco Institute, Inc.

Plaintiffs allege, in essence, that defendants have fraudulently failed to inform smokers that nicotine is addictive, despite the defendants' possession of such knowledge. Plaintiffs further allege that defendants have manipulated the level of nicotine in cigarettes with the intent and purpose of creating and sustaining the addictive nature of cigarettes. According to plaintiffs, defendants have de-

nied both the addictive nature of cigarettes and defendants' manipulation of nicotine levels in cigarettes.

The first nine causes of action are: fraud and deceit; negligent misrepresentation; intentional infliction of emotional distress; negligence and negligent infliction of emotional distress; violation of consumer protection statutes under state law; breach of express warranty; breach of implied warranty; strict product liability; and redhibition pursuant to the Louisiana Civil Code. Plaintiffs seek damages for economic loss and emotional distress as well as punitive damages. In regard to the alleged violation of consumer protection statutes, plaintiffs also seek attorneys' fees and equitable relief as requested in their tenth cause of action.

Plaintiffs' tenth cause of action seeks declarations that defendants are financially responsible for notifying all class members of nicotine's addictive nature and that defendants manipulated nicotine levels with the intent to sustain the addiction of plaintiffs and the putative class members. Plaintiffs also seek "restitution and refunds" for sums paid by plaintiffs and the putative class members to purchase cigarettes. Additionally, plaintiffs seek an order that defendants must disgorge any profits made from the sale of cigarettes and must make restitution to plaintiffs and the putative class members. Finally, plaintiffs seek establishment of a medical monitoring fund by defendants. (Paragraph 109, First Amended Class Action Complaint, R.Doc. 36.) The alleged purpose of the medical monitoring fund is "to monitor the health of Plaintiffs and Class Members and to pay or reimburse Class Members for all medical expenses caused by Defendants' wrongdoing." (Paragraph 109(d), First Amended Class Action Complaint, R.Doc. 36.)

Plaintiffs do not seek recovery of personal injury damages in the form of physical pain and suffering or any related damages.[2]

---

1. These are: The American Tobacco Company, Inc.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Phillip Morris, Inc.; Liggett & Myers, Inc.; Lorillard Tobacco Company, Inc.; United States Tobacco Company; and their various parent and related companies.

2. "Plaintiffs' Proposed Trial Plan" makes a reference to possible expansion of this action to include personal injury damages. ("Plaintiffs' Pro-

Plaintiffs' proposed class representatives include plaintiffs and Gloria Scott and Denia Jackson, who are also cigarette smokers. (R.Doc. 69.) Plaintiffs' proposed class definition is:

(a) All nicotine dependent persons in the United States, its territories and possessions and the Commonwealth of Puerto Rico who have purchased and smoked cigarettes manufactured by the Tobacco Companies; [3]

(b) the estates, representatives, and administrators of these nicotine dependent cigarette smokers; and,

(c) the spouses, children, relatives and "significant others" of these nicotine dependent cigarette smokers as their heirs or survivors.

(R.Doc. 36, Paragraph 20.)

In their First Amended Class Action Complaint, plaintiffs define "nicotine dependent" as referring "to persons having or had (sic) nicotine dependence under the criteria therefor set forth in [that] edition of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, e.g.,* 3rd Ed. Revised ('DSM IIIR')." (R.Doc. 36, Paragraph 20.) Plaintiffs propose the following "working definition" of "nicotine-dependent":

1. All cigarette smokers who have been diagnosed by a medical practitioner as nicotine-dependent;

2. All regular cigarette smokers who have made at least one unsuccessful effort to quit smoking; and/or

3. All regular cigarette smokers who were or have been advised by a medical practitioner that smoking has had or will have adverse health consequences who thereafter do not or have not quit smoking.

(R.Doc. 69.)

In "Plaintiffs' Answers to Defendants' Class Certification Interrogatories," plaintiffs state that their proposed class definition is consistent with and based on the Fourth Edition of *Diagnostic and Statistical Manual of Mental Disorders* (hereinafter "DSM–IV"). (Interrogatory Answers Nos. 28, 29 and 31, R.Doc. 108.)

Plaintiffs argue that the general requirements of Fed.R.Civ.P. 23(a)(1)–(4) are easily satisfied.[4] Plaintiffs contend that class certification is proper for their claims for damages under Fed.R.Civ.P. 23(b)(3). Plaintiffs seek class certification of their equitable claim for relief, including the medical monitoring, pursuant to Fed.R.Civ.P. 23(b)(2).[5] Alternatively, plaintiffs seek "issue certifica-

posed Trial Plan," p. 5–6, n. 5, R.Doc. 250.) The Court specifically makes no findings concerning class certification involving personal injury damages at this time, as these allegations are not before the Court.

3. Plaintiffs use the term "Tobacco Companies" in their First Amended Complaint to identify the tobacco company defendants and their parent and related companies. (R.Doc. 36, Paragraph 15.)

4. Rule 23(a) states:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

5. Sections (b)(2) and (b)(3) of Rule 23 state:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    \*    \*   .  \*    \*    \*    \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

tion" under Fed.R.Civ.P. 23(c)(4).[6] Defendants forcefully oppose class certification under any circumstances.

## LAW AND APPLICATION

■ Bearing in mind that the burden of proof on certification rests with plaintiffs, *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 486 (5th Cir.1982), the Court first examines whether plaintiffs' claims fit within the requirements of Rule 23(a). The next issue is whether plaintiffs' claim for equitable relief meets the standards of Rule 23(b)(2). Finally, the Court decides whether plaintiffs' action is properly certifiable under Rule 23(b)(3). On the latter issue, the Court analyzes the liability and damages portions of plaintiffs' claim separately and also addresses plaintiffs' proposed class definition.

In making these determinations, the Court is ever mindful of the following admonition from the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974):

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.... [W]e agree with Judge [John Minor] Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (CA5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.*, at 427.

### A. Rule 23(a) Prerequisites

■ Numerosity is the first requirement under Rule 23(a). There can be no doubt that in this case plaintiffs meet the numerosity requirement. Plaintiffs estimate that 50 million Americans smoke cigarettes and "believe ... that the Class includes ten (sic) of millions of members." (Paragraph 23, First Amended Class Action Complaint, R.Doc. 36.) Plaintiffs' proposed class definition and "working definition" of "nicotine-dependent" include not only current smokers but also former smokers. Further, plaintiffs' proposed "opening" or "start date" for the class is January 1, 1943. (R.Doc. 69, p. 23.) Although Rule 23(a)(1) requires only that joinder of all members be difficult and impracticable, not impossible, joinder of all class members in this case would be impossible. *See* C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 1762 (1986).

Indeed, one of defendants' main contentions raised concerning the manageability of this class action is that there are so many potential individual claims—millions—that class action is improper. Numerosity is firmly established.

The second requirement of Rule 23(a) is commonality, *i.e.*, whether there are questions of law or fact that are common to the class. Fed.R.Civ.P. 23(a)(2). This issue also requires little discussion. "The threshold of 'commonality' is not high.... [T]he rule requires only that resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). To be sure, there exist questions of fact and law common to the class as to whether defendants fraudulently failed to inform plaintiffs that nicotine was addictive and/or manipulated the level of nicotine in cigarettes so as to control their addictive nature. Although, at first glance, there appear to be individual issues involved in this matter, the Court finds that these individual issues bear more on the 23(b)(3) issues of predominance and superiority than on commonality.

The third requirement of 23(a) is "typicality." Fed.R.Civ.P. 23(a)(3). This "requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than

---

**6.** Rule 23(c)(4) states, in pertinent part:
When appropriate ... an action may be brought or maintained as a class action with respect to particular issues ... and the provisions of this rule shall then be construed and applied accordingly.

on the similarity of the legal and remedial theories behind their claims." *Jenkins*, 782 F.2d at 472. As with the test for commonality, the test for typicality "is not demanding." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993). Once again, there can be no serious dispute about the similarity of the legal theories between plaintiffs and the putative class members. While the law to be applied in this diversity matter remains to be determined, there is no doubt that the underlying theories of fraud, breach of warranty (both express and implied), intentional tort, negligence, strict liability and alleged violations of consumer protection statutes are and would be typical of plaintiffs and putative class members' claims.

Finally, with reference to Rule 23(a), the Court finds that the representative parties, *i.e.*, the three plaintiffs, two other proposed class representatives and their counsel, would adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). "The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and protect the interests of the absentees." *Horton v. Goose Creek Independent School District*, 690 F.2d at 484. The Court finds that the plaintiffs and other proposed class representatives have taken and appear prepared to take an active role in this litigation sufficient to protect the interests of all class members.

Further, as in *Jenkins*, the defendants in this case "have not shown that the [proposed class] representatives are 'inadequate' due to an insufficient stake in the outcome or interests antagonistic to the unnamed members." *Id.*

Given the attorneys who have appeared on behalf of plaintiffs in this action and those appointed to serve as the Interim Plaintiffs' Legal Committee, the Court finds that the proposed class representatives' counsel have the zeal, competence, expertise, financial resources and experience in class-action and multiple-claimant cases to prosecute this matter. The Court also notes that the Fifth Circuit has not required the putative representatives "to present proof of financial resources in order to meet [their] burden of proof on the issue of adequacy." *Id.*, n. 26. Moreover, defendants have not presented the Court with any indication that the putative representatives or their counsel do not have adequate resources to finance this class litigation if certified.

Therefore, plaintiffs have satisfactorily crossed the first hurdle under Rule 23(a) for class certification.

### B. Certification Under Rule 23(b)(2)

The next issue is whether plaintiffs' claim for equitable relief can be certified under Rule 23(b)(2). In support of this argument plaintiffs principally rely on the case of *Day v. NLO* and the various opinions authored by Judge Spiegel in that case.[7] In *Day v. NLO* plaintiffs were former employees of the Feed Materials Production Center (hereinafter "FMPC") and other "independent contractors, frequenters or business invitees who frequently worked at the FMPC, and their families." *Day v. NLO*, 144 F.R.D. at 332. Plaintiffs claimed that the defendants, former operators of FMPC, "negligently or intentionally expose[d] the plaintiffs to dangerous levels of radioactive and hazardous materials." *Id.* They maintained that their personal property had been damaged and "that they [suffered] severe emotional distress in the form of increased fear of cancer." *Id.*

Throughout *Day v. NLO*, Judge Spiegel characterized plaintiffs' primary claim for relief as a "court-supervised medical monitoring program." *Day v. NLO*, 144 F.R.D. at 335; 811 F.Supp. at 1275; 851 F.Supp. at 885. Indeed, Judge Spiegel specifically rejected defendants' contention that plaintiffs were seeking compensatory and punitive damages and found instead that the primary relief sought was establishment of the medical-monitoring program. 811 F.Supp. at 1275.

---

7. *Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D.Ohio 1992), *mandamus granted in part and denied in part*, 5 F.3d 154 (6th Cir.1993); *Day v. NLO, Inc.*, 811 F.Supp. 1271 (S.D.Ohio 1992); and *Day v. NLO, Inc.*, 851 F.Supp. 869 (S.D.Ohio 1994).

■ The instant case is distinguishable from *Day v. NLO* because the medical-monitoring program sought by plaintiffs is but one type of relief sought among many. As set forth above, plaintiffs seek compensatory, statutory and punitive damages in their first nine causes of action. This is far beyond Judge Spiegel's characterization of the relief sought by plaintiffs in *Day v. NLO*. As Judge Spiegel recognized, Rule 23(b)(3) is the "preferred section [for certification] where monetary damages are the primary goal of plaintiff." *Day v. NLO*, 851 F.Supp. at 885–86. Here the Court is persuaded that plaintiffs are seeking primarily monetary damages, not equitable relief. Therefore, the Court declines to certify plaintiffs' claim for medical monitoring under Rule 23(b)(2).

The Court also finds merit in defendants' argument based on their Seventh Amendment right to a jury trial. In *Thermo–Stitch, Inc. v. Chemi–Cord Processing Corp.*, 294 F.2d 486 (5th Cir.1961), the Fifth Circuit squarely faced the issue of whether equitable issues could be severed from issues at law for a non-jury trial. Plaintiff Chemi–Cord and one of its customers had filed suit to restrain defendant Thermo–Stitch "from interfering with its business relations and from harassing it by threats of suit" in a patent dispute. *Id.* at 487. The complaint sought injunctive relief along with a declaratory judgment that three patents held by Thermo–Stitch were invalid and not infringed. *Id.* Thermo–Stitch filed counterclaims for damages for patent infringement, fraud and anti-trust violations. *Id.* Plaintiffs moved for an immediate and separate trial on the issues of validity and infringement and sought to strike Thermo–Stitch's motion for a jury trial on those issues. *Id.* The district court granted the plaintiffs' motion, but the Fifth Circuit held "that the court below exceeded its discretion in not ordering a jury trial," following *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

> *Beacon Theatres* holds that where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is "very narrowly limited and must, wherever possible, be exercised to preserve jury trial." Analogizing a motion for a non-jury trial of common issues to a suit for an injunction, the Court held that a showing of irreparable injury and inadequate relief at law is required.... While the right to trial by jury is a constitutional one, no similar importance attaches to trial by court. Under the flexible procedures of the Federal Rules [of Civil Procedure], a jury determines issues pertinent to an equitable cause of action without interruption or prejudice to the proceeding; the court decides whether equitable relief is called for on the basis of the jury's finding of fact. The mere presence of an equitable cause of action furnishes no legal justification for depriving a party to a legal action of his right to a jury trial.
>
> It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in *Beacon Theatres*. It would make no difference if the equitable cause of action clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. This is the teaching of *Beacon Theatres*, as we construe it.

*Thermo–Stitch*, 294 F.2d at 490–91 (citations and footnotes omitted).

■ The Court finds *Thermo–Stitch* instructive as to the issue of certification of plaintiffs' medical monitoring claim, especially in view of this Court's finding that plaintiffs' claims are not primarily for equitable relief but for damages. Certification of the medical monitoring claim in this case under Rule 23(b)(2) would infringe on the constitutional right to a jury trial. The Court cannot and will not infringe on that inviolate right.

## C. Certification under Rule 23(b)(3)

The issue that remains is whether plaintiffs' action can be certified as a class under Rule 23(b)(3). For purposes of clarity, the Court addresses the core issues of liability separate from the other issues in this matter, including those of damages.

## 1. Core Liability Issues

To begin, this analysis bears repeating the pertinent portion of Rule 23(b)(3):

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \*   \*   \*   \*   \*   \*
>
> (3) the court finds that the questions of law or fact common to members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the proceedings. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. (Emphasis added.)

"In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins,* 782 F.2d at 472, citing *In re Asbestos School Litigation,* 104 F.R.D. 422, 431–32 (E.D.Pa.1984) and *In re Tetracycline Cases,* 107 F.R.D. 719, 727 (W.D.Mo.1985).

Like the *Jenkins* case, which involved thousands of asbestos exposure cases, the Court concludes that "[i]t is difficult to imagine that class jury findings on [the core liability issues in this case] will not significantly advance the resolution" of the thousands, if not millions, of similar issues in individual cases which have not yet been filed pending the instant ruling. (Affidavit of Wendell Gauthier, R.Doc. 245.) Thus, it is the Court's view that common factual issues include whether defendants knew cigarette smoking was addictive, failed to inform cigarette smokers of such and took actions to addict cigarette smokers. Common legal issues include fraud, negligence, breach of warranty (express or implied), strict liability, and violation of consumer protection statutes.[8]

As to the fraud allegation, the Court finds applicable the Advisory Committee Notes to the 1966 Amendment to Rule 23. In addressing the 23(b)(3) requirement of predominance, the drafters stated:

> [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.

The Court recognizes that the next sentence of the Advisory Notes states that "a fraud case may be unsuited for treatment as a class action if there was material variation in the misrepresentations made or in the kinds or degrees of reliance by the person to whom they were addressed." Defendants seize upon this issue, contending that the individual issues of reliance in this matter would so swamp the Court that common issues would not predominate. The Court disagrees for two reasons, both arising out of the same case on which defendants principally rely: *Mirkin v. Wasserman,* 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (Cal. 1993).

In that case plaintiffs' first amended complaint purported to state causes of action for deceit and negligent misrepresentation. *Id.* at 1088, 23 Cal.Rptr.2d at 103, 858 P.2d at 570. Plaintiffs alleged reliance in a conclusory fashion. *Id.* The trial court dismissed the complaint for an insufficient allegation of reliance, and the court of appeals sustained that decision. *Id.* The California Supreme Court first noted that the cause of action of deceit was rooted in the common law cause of action of fraud. *Id.* at 1091–92, 23 Cal.Rptr. at 105, 858 P.2d at 572. The court, also noting that its decision applied equally to deceit and negligent misrepresentation,

---

8. Plaintiffs also alleged a cause of action under the Louisiana law of redhibition. As discussed below, this Court has not yet determined the law to be applied in this matter. Because, redhibi-tion arises only under Louisiana law, it is a common legal question as to the named plaintiffs but not, at this time, as to the proposed class.

found it well settled that a plaintiff must plead actual reliance to state such a cause of action. *Id.* at 1088–89, 23 Cal.Rptr. at 103, 868 P.2d at 570 and n. 2. The issue before this Court, however, is not whether plaintiffs have stated a cause of action for fraud or negligent misrepresentation. The issue is whether the common issues so predominate over the individual issues that class certification is appropriate. Because this Court cannot prejudge the merits of this litigation, *see Eisen, supra,* the Court holds that on the face of the pleadings before it the common issues of fraud substantially outweigh any individual issues of reliance.

Second, *Mirkin* recognized that in consumer class actions where plaintiff "specifically pled that the defendants had made identical representations to each class member," it may be appropriate to "infer that each member of a class had actually relied on the defendant's alleged misrepresentations." *Mirkin,* 5 Cal.4th at 1094, 23 Cal.Rptr.2d at 107, 858 P.2d at 574.

Plaintiffs here have pleaded omissions as well as commissions on the part of defendants in their various causes of action. It is true that the California Supreme Court rejected the argument that actual reliance cannot be an element of deceit, or fraud, with respect to an alleged omission.[9] However, at this point in this lawsuit, and considering the conditional nature of the certification of this class, as set forth below, the Court does not find that the issue of "omission v. commission" is so substantial a factor as to prevent a finding of predominance of class issues over individual issues. Indeed, just as the *Mirkin* court found that an inference of reliance may be available in consumer class action matters involving allegations of misrepresentations actually made, *id.* at 1095, 23 Cal.Rptr.2d at 108, 858 P.2d at 575, such an inference may be available in consumer class actions based on claims of misrepresentations based on omission. Moreover, as noted, this issue is more appropriate in a determination of whether plaintiffs have stated a cause of action than in a decision on a motion for class certification.

Also as to predominance, plaintiffs argue that the law applicable to each of their causes of action is so generic that individual issues will not predominate. In opposition, defendants posit that the standards for determination of each of plaintiffs' causes of action may vary from state to state and cause mass confusion such that class certification is improper. As a court sitting in diversity, this Court must apply the law of the forum concerning conflict of laws. *See, e.g., Seagrave v. Delta Airlines,* 848 F.Supp. 82, 83 (E.D.La.1994) (Livaudais, J.) (court sitting in diversity applies choice of law principles of forum state, Louisiana, citing *Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas, Inc.,* 846 F.2d 319 (5th Cir.1988)). The Court is persuaded that issues of fraud, breach of warranty, negligence, intentional tort and strict liability do not vary so much from state to state as to cause individual issues to predominate. *See, e.g., In re School Asbestos Litigation,* 104 F.R.D. 422, 434 (E.D.Pa.1984), *aff'd in part and reversed in part,* 789 F.2d 996, 1010 (1986) (discussing the similarity of negligence and strict liability in U.S. jurisdictions); "Decision and Entry ... Sustaining Plaintiffs' Motions to Conditionally Certify These Actions as a Class Action," *In re Cordis Cardiac Pacemaker Product Liability Litigation,* Case No. C–3–90–374) (December 23, 1992) (discussing similarities of strict liability and fraud).

Further, there has been no determination at this time of the law to be applied. The parties have only briefly addressed the conflict of laws issue in this matter, and the Court finds a determination of that issue to be premature at present. Finally, Rule 23(c)(4)(B) provides the Court with the option of dividing the class into subclasses if appropriate after the Court resolves the conflict of laws issue. *In re Asbestos School Litigation,* 104 F.R.D. at 434.

The same reasoning applies to application of the various consumer protection statutes. First, there has been no showing that the consumer protection statutes differ so much as to make individual issues predominate.

9. "One need only prove that, had the omitted information been disclosed one would have been aware of it and behaved differently." *Id.* at 1093, 23 Cal.Rptr.2d at 107, 858 P.2d at 574.

Indeed, as with the other areas of law, the applicable statute—or statutes—has not yet been determined. The option of subclasses is available as to this issue as well.

Therefore, as to Rule 23(b)(3)'s require- ment of predominance, the Court finds that plaintiffs' factual and legal allegations of liability constitute similar, common issues that would be a significant part of any individual cases that have been or may be filed. To that extent, this standard of Rule 23(b)(3) is satisfied.

■ The next requirement of Rule 23(b)(3) is superiority, *i.e.*, whether a class action in this matter is superior to any other "available methods" for adjudication of the issues at hand. Once again, the Court turns to *Jenkins* for guidance on this issue. In discussing Judge Parker's plan for the asbestos exposure cases, the Fifth Circuit stated:

Courts have usually avoided class actions in the mass accident or tort setting. Because of differences between individual plaintiffs on issues of liability and defenses of liability, as well as damages, it has been feared that separate trials would overshadow the common disposition for the class. *See* Advisory Committee Notes to 1966 Amendment to Fed.R.Civ.P. 23(b)(3). The courts are now being forced to rethink the alternatives and priorities by the current volume of litigation and more frequent mass disasters. *See* McGovern, Management of Multiparty Toxic Tort Litigation: Case Law and Trends Affecting Case Management, 19 Forum 1 (1983). If Congress leaves us to our own devices, we may be forced to abandon repetitive hearings and arguments for each claimant's attorney to the extent enjoyed by the profession in the past. Be that as time will tell, the decision at hand [approving the class certification by Judge Parker] is clearly superior to the alternative of repeating, hundreds of times over, the litigation of the state of the art issues. . . .

\*　\*　\*　\*　\*　\*

Necessity moves us to change and invent. Both the [*In re*] *Agent Orange* [*Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y.1980) ] and *Asbestos School* courts found that specific issues could be decided in a class "mass tort" action—even on a nationwide basis. We approve of the district court's decision in finding that this "mass tort" class could be certified. *Jenkins,* 782 F.2d at 473.

This proposed class action is *sui generis.* It is not a toxic tort exposure case. *See, e.g., Day v. NLO, supra.* Neither is it a case involving exposure to a substance or product where plaintiffs claim physical injuries, such as *Jenkins. See also Dante v. Dow Corning Corporation,* 143 F.R.D. 136 (S.D.Ohio 1992). Plaintiffs do not allege physical injuries and property damage, as was alleged in *In re Shell Oil Refinery,* 136 F.R.D. 588 (E.D.La. 1991), *aff'd sub nom. Watson v. Shell Oil Co.,* 979 F.2d 1014 (5th Cir.1992), *rehearing on banc granted,* 990 F.2d 805 (5th Cir.1993).[10] Nor is this a case involving only property damage. *See, e.g., In re School Asbestos Litigation, supra.* Rather, this is a case in which plaintiffs claim that defendants' acts reached throughout the nation to addict cigarette smokers and keep them addicted.

Faced squarely with this unique action, this Court must also look forward and invent, knowing that "[t]he purpose of class actions is to conserve 'the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.' " *Jenkins,* 782 F.2d at 471, quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982).

Rule 23(b)(3) gives guidance as to factors this Court should consider in determining predominance and superiority. In the present litigation, the most pertinent of these is its manageability as a class. While the manageability of the liability issues in this case may well prove to be difficult, the Court finds that any such difficulties pale in comparison to the specter of thousands, if not millions, of

---

**10.** While this case was awaiting rehearing *en banc,* it settled. Rule 35.6 of the Internal Operating Procedures of the Fifth Circuit provides

that "the effect of granting a rehearing en banc is to vacate the previous opinion and judgment of the Court and to stay the mandate."

similar trials of liability proceeding in thousands of courtrooms around the nation. In addition, the common issues in this case would materially advance the resolution of the case itself. Likewise, as the *Jenkins* court pointed out, "it seems that the defendants enjoy all of the advantages, and the plaintiffs incur the disadvantages, of the class action—with one exception, the cases are brought to trial." *Jenkins*, 782 F.2d at 473.

■ Hence, the Court finds that plaintiffs' motion should be granted insofar as the core liability issues alleged by plaintiffs are concerned. These are the issues of fraud, breach of warranty (express or implied), intentional tort, negligence, strict liability and consumer protection.

### 2. Issues of Injury-in-fact, Proximate Cause, Reliance and Affirmative Defenses

While the core liability issues provide common ground for class certification, the foundation is not so firm regarding the issues of injury-in-fact, proximate cause, reliance [11] and affirmative defenses.

■ From a review of the pleadings, it is clear that all of these issues are so individually based that class certification is improper. For example, the following issues are so overwhelmingly replete with individual circumstances that they quickly outweigh predominance and superiority. First is whether a person suffered emotional injury, if any, as a result of addiction. Second is whether a person's addiction was caused by any actions of the defendants. Third is whether each plaintiff relied on defendants' representa-

tions, whether they be omissions or commissions, in beginning or continuing to smoke cigarettes.[12] Fourth is whether affirmative defenses unique to each class member preclude plaintiffs' recovery in any manner.

Thus, because individual issues, not common issues, predominate and are superior in regard to injury-in-fact, proximate cause, reliance and affirmative defenses, class certification is improper as to these issues.[13]

### 3. Compensatory Damages

■ Similarly, the Court finds that the issues of compensatory damages, including the claim for medical monitoring, are so inextricably intertwined with the issues of proximate cause and affirmative defenses that resolution of these issues would not materially advance this case. Assuming liability is found on the core liability issues, factfinders assessing the cases of individual plaintiffs would be in a much better position to determine compensatory damages, depending on whether plaintiffs can prove causation and injury and refute any affirmative defenses.

■ This reasoning applies equally to plaintiffs' claim for medical monitoring. In this respect, the Court finds instructive the following passage by Judge Scirica in *Brown v. Southeastern Pennsylvania Transportation Authority*, 1987 WL 9273, *10 (E.D.Pa. 1987).

> The alleged harm from [exposure to] PCBs occurred over a period of at least ten years, under a variety of circumstances and to various degrees. Some class members may have been exposed to PCBs for a few months, while others, for a life-

---

11. As stated above, the Court believes its present duty does not include a determination whether, in light of the issue of reliance, plaintiffs have stated a cause of action for fraud. At this time, the Court believes that the issues of fraud and reliance can be separated so as to certify a class for the general issue of fraud but not for the individual issue of reliance.

12. As noted above, the California Supreme Court has stated that, in appropriate circumstances, an inference of classwide reliance may pass legal muster in an action for fraud. If such an inference would be appropriate in this case, then the individual issue of reliance may be submerged into the fraud action itself. On the other hand, if

the inference is not appropriate, the Court may, for example, submit special interrogatories to the jury which require that it make findings as to all essential elements of a fraud cause of action except reliance, which might then be determined later in individual actions. However, as noted, it is premature to determine this issue, just as it would be premature to determine whether plaintiffs have stated an action for fraud.

13. Plaintiffs have only briefly mentioned in their Proposed Trial Plan that a "state of the art" defense should also be certified. (R.Doc. 250, p. 8.) The Court finds that plaintiffs have failed to carry their burden of showing why a "state of the art" defense should be certified.

time.... Moreover, each plaintiff will bring a unique medical history that will provide the basis for his or her individual claim.

Here, the varying lengths of time of smoking coupled with the various medical conditions of each putative class member would overwhelm any common issues concerning medical monitoring.

### 4. Punitive Damages

■ As regard to the issues of liability for and assessment of punitive damages, plaintiffs concede that certain states "require a relationship between quantum and actual damages and that of punitive damages." (Plaintiffs' Proposed Trial Plan, R.Doc. 250, p. 21.) Plaintiffs also concede that the states differ as to the burden of proof required of plaintiffs seeking punitive damages. While the burden of proof in some states is by a preponderance of the evidence, the burden in others is by clear and convincing evidence. *Id.*

However, these differences, like the differences in the law of the core liability issues among the jurisdictions, are not so substantial as to prevent certification of punitive damages under Rule 23(b)(3). Guidance is once again found in *Jenkins, supra,* and also in *Watson v. Shell Oil Company, supra.*

In *Jenkins* the trial court certified a class as to common issues. *Jenkins,* 782 F.2d at 471. In addition to providing a method for adjudication of the individual issues as to both the class representatives and the unnamed members, the class action jury was to evaluate the culpability of defendants' conduct for a possible punitive damages award. *Id.* The *Jenkins* trial plan applied Texas law, which provided that punitive damages could only be awarded if actual damages are awarded. *Id.* at 471, 474. On appeal the defendants attacked the constitutionality of bifurcation of the punitive damages claim from the actual damages claim, but the Fifth Circuit upheld the plan. *Id.* at 474.

The court of appeals found that the allocation of punitive damages "need not be made concurrently with an evaluation of defendant's conduct. The relative timing of these assessments is not critical." *Id.* The critical issue under Texas law was "reasonable proportionality," and the Fifth Circuit found that the trial court's plan allowed for its "review of the reasonableness of each plaintiff's punitive damage award and *for our review of the standards which the court has applied.*" *Id.* (Emphasis added).

The Fifth Circuit found that "[c]are must ... be taken to ensure fairness," *i.e.,* the jury would have to be told that all plaintiffs' claims would differ and that the possibility existed that some plaintiffs may not be found to have suffered actual damages, which would preclude the award of punitive damages for those plaintiffs. *Id.*

Alternatively, the jury could be allowed to award an amount of money that each class member should receive for each dollar of actual damages awarded. Either way, the jury should understand that it must differentiate between proven and still-unproved claims, and that all class members, who recover actual damages from a defendant held liable for punitive damages, will share in the punitive award.

*Id.*

In *Watson,* the trial court identified common issues of liability as to both compensatory damages and punitive damages. *Watson,* 979 F.2d at 1017. *See also, In re Shell Oil Refinery,* 136 F.R.D. 588, 590 (E.D.La.1991) (Mentz, J.). The district court's trial plan provided for a determination of common issues of liability, including liability for punitive damages, in Phase 1. *Watson,* 979 F.2d at 1018.

If the jury found punitive damages liability it would then perform the Phase 2 function and determine compensatory damages in 20 fully-tried sample plaintiff cases. Based on the findings in these cases, the jury would then establish the ratio of punitive damages to compensatory damages for each class member. If the jury finds no punitive damage liability in Phase 1, Phase 2 is to be omitted.

*Id.* In Phase 3 a different jury would resolve issues unique to compensatory damages, such as causation and quantum, and Phase 4 provided for the district court's computing of punitive damages, if established in

Phase 1, for those plaintiffs awarded actual damages. *Id.*

The court of appeals approved the trial plan as to punitive damages for a number of reasons. First, the court found that "the Phase 2 jury is to make a determination about punitive damages in a mass-disaster context, rather than compensatory damages in products liability litigation." *Id.* at 1018–19.[14] Second, because there would be "minimal variance" between plaintiffs as to the degree of culpability necessary to establish punitive damages, assessment of punitive damages on the basis of a cross-section of the class would not "require 'lift[ing] the description of the claims to a level of generality that tears them from their substantially required moorings.' " *Id.*, quoting *Fibreboard.*

> More importantly, the Phase 2 jury is not to extrapolate punitive damages but, rather, is to determine a basis for assessment of punitive damages in the narrow form of a ratio. . . . Phases 2 and 3 appropriately enforce the Louisiana law requirement that a claimant prove both causation and damage to recover compensatory and punitive damage.

*Watson,* 979 F.2d at 1019.

In view of the approval in both *Jenkins* and *Watson* of class certification and trial of punitive damages claims,[15] the Court finds that certification under 23(b)(3) is proper for both the issue of liability for punitive damages and assessment of punitive damages as a ratio of actual damages should punitive damages liability be found. The Court will impose the necessary safeguards at trial to ensure that jurors understand the appropriate burden or burdens of proof that plaintiffs must meet to impose punitive damages liability. The Court also will instruct the jury, in accord with *Jenkins,* that it is only assessing a ratio of punitive damages to actual damages and that some plaintiffs may not recover actual damages at all, thereby eliminating those plaintiffs' claims for punitive damages.

Viewed in light of *Jenkins* and *Watson,* the Court finds that the issues of both liability and assessment of a ratio or multiplier of punitive damages are not so individualized as to preclude class certification. Although this path may seem difficult at first, this Court believes that certification of these punitive damages issues will substantially move this litigation toward a final resolution such that class certification is proper pursuant to Rule 23(b)(3).

### D. Plaintiffs' Proposed Class Definition

Defendants also contend that class certification is improper because plaintiffs' proposed class definition is overly broad.[16] According to defendants, only a detailed, individual diagnosis by trained clinicians could properly identify putative class members. Further, defendants argue that the definition is unconstitutionally vague in failing to give persons a meaningful opportunity to opt-out and/or opt-in, creating a "fail-safe class," *i.e.,* allowing class members to decline to become formal parties but later claim they were not bound because they never intended to join the class.

> [A] class capable of definition must exist. An identifiable class is essential so that the Court can determine whether a particular claimant is a class member. *DeBremaeker [DeBremaecker] v. Short,* 433 F.2d 733, 734 (5th Cir.1970) (*per curiam*) ("adequately defined and clearly ascertainable"). The inquiry is whether "it is administratively feasible for the court to determine whether a particular individual is a member." 7A Wright, Miller & Kane, Federal Practice & Procedure Civil 2d § 1760 at 121 (1986). This requires that the class be defined "in objective terms that are capable of present ascertainment." *Manual*

---

**14.** Thus, *Watson* was distinguishable from *In re Fibreboard,* 893 F.2d 706 (5th Cir.1990).

**15.** The Court understands that the *Watson* judgment was vacated by the grant of rehearing *en banc* and that the case settled thereafter without the Fifth Circuit having an opportunity to opine on the propriety of the panel decision. Footnote 9, *supra.* Nevertheless, the Court finds *Watson* persuasive in light of the prior Fifth Circuit discussion in *Jenkins.*

**16.** Plaintiffs' proposed class definition and proposed "working definition" for the term "nicotine-dependent" are delineated at pp. 548–49, *supra.*

*for Complex Litigation* 2d § 30.14 at 213 (1985).

*McGuire v. International Paper Company,* 1994 WL 261360 at *3 (S.D.Miss.1994).

██ In this case, plaintiffs' proposed class definition is acceptable with the exception of one part of the plaintiffs' "working definition" of "nicotine-dependent," on which the proposed class definition is based. The second part of that "working definition" defines "nicotine-dependent" persons as including smokers who have made at least one unsuccessful effort to quit smoking.

The Court finds that this definition of "nicotine-dependent" is overly broad and would not allow for an administrative determination of whether a person is a member of the class. To define nicotine-dependent persons as "all regular cigarette smokers who have made at least one *unsuccessful effort* to quit smoking" (emphasis added) impermissibly allows a subjective determination to infect the class determination process. There could be no "clear ascertainment" of whether an individual is a member of the class. Therefore, the Court will not allow the plaintiffs to employ this part of the "working definition" of "nicotine-dependent" in their class definition.

On the other hand, the first and third parts of the "working definition" set down objective criteria for determination of whether a person is nicotine-dependent. The first part contains the most obvious objective criteria: a diagnosis by a medical practitioner of nicotine dependency. The third part is not as precise as the first but still provides for objective criteria. This "working definition" includes those persons who have been advised by a medical practitioner that smoking has affected or will adversely affect their health but who continue to smoke anyway. These two "working definitions" meet the objective criteria that allow clear ascertainment of class members.

Thus, with the foregoing exception, the Court finds that the plaintiffs' proposed class definition is not so overly broad or impermissibly vague as to prevent class certification.

### E. Issue Certification under Rule 23(c)(4)

The Court's determination that only some of the issues raised by plaintiffs but not others are properly certifiable under Rule 23(b)(3) does not end the inquiry. Rule 23(c)(4) provides that, "when appropriate," not only may classes be divided into subclasses but also that "an action may be brought or maintained as a class action with respect to particular issues." The Notes of the Advisory Committee on Rules for the 1966 Amendment to Rule 23(c)(4) specifically acknowledge the applicability of issue certification as to "fraud or similar case[s]" where the class issue is liability but where individuals must prove their respective damages claims.

██ In accord with this rule, the Court finds that issue certification of the core liability issues set forth above is proper. Each of these core liability issues separately meets the requirements of Rule 23(a) and 23(b)(3), as discussed above and as required by 23(c)(4). *See, e.g., Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 189 (4th Cir.1993). The issue of punitive damages also satisfies the requirements of Rule 23(a) and (b)(3). Further, as explained previously, while these issues will determine only liability and punitive damages, not causation, injury, reliance, compensatory damages or the applicability of affirmative defenses, the Court finds that determination of liability and punitive damages will move this litigation substantially toward an end due to its unique and far-reaching nature. As the Fifth Circuit stated in *Jenkins,* "necessity moves us *to change* and invent." *Jenkins,* 782 F.2d at 473 (emphasis added). Necessity in the form of the present class action moves this Court *to certify* the liability issues and punitive damages on a classwide basis in order to promote judicial economy and efficiency.

### F. Conditional Certification

Finally, pursuant to Rule 23(c)(1), the Court grants plaintiffs' motion for issue certification conditionally. As this case progresses, if the Court finds that circumstances or conditions change such that, for example, individual issues predominate, alternative

methods exist for fair adjudication of the liability issues or the class action becomes unmanageable, then the Court may revisit the propriety of certification.[17]

### G. Future Direction

First, in accord with this decision, the Court will conditionally certify a class for the limited purposes described above. The Court will also order that, pursuant to Fed. R.Civ.P. 23(c)(2), plaintiffs show cause as to the best notice practicable to all members of the class.

Plaintiffs also will be ordered to propose a discovery plan to the United States Magistrate Judge. Defendants will be allowed to object, if they desire, and to propose an alternative plan. The Magistrate Judge shall then conduct a hearing on the proposed plan or plans. Following the hearing, the Magistrate Judge shall prepare a Discovery Order that will guide the course of this litigation. This Discovery Order shall include, but not be limited to, a timetable for discovery, a plan identifying which particular attorneys shall be allowed to depose any officers or employees of defendants as well as plaintiffs, and a specific order that the parties not engage in any repetitious or harassing discovery, whether that discovery is in the form of depositions, interrogatories, requests for production, requests for admission or otherwise.

The Court will also direct the Clerk of Court to establish a pleadings depository in accord with the Uniform Local Rules of the United States District Courts for the Eastern District of Louisiana, the Middle District of Louisiana and the Western District of Louisiana. All documents shall be prepared in WordPerfect 5.1 format and shall be filed in that depository in both paper form and on two 3 1/2" computer disks. Persons may obtain copies of any such documents in hard-copy form or on computer disk upon payment of the required cost to the Clerk of Court. Any person wishing to obtain copies may request a copy from the Clerk by title and document number previously assigned by the

Clerk. After receiving payment, the Clerk shall supply the copies either in hard copy or on a computer disk formatted in WordPerfect 5.1. Such a formatted disk may be supplied by the person requesting the document.

Finally, following the establishment of the Discovery Order, the Court shall conduct a preliminary conference with Liaison Counsel to select dates for various preliminary matters, final pre-trial conference, trial and other matters provided in Fed.R.Civ.P. 16.

### CONCLUSION

With this decision, the Court embarks on a road certainly less traveled, if ever taken at all. *See* Edward C. Latham, *The Poetry of Robert Frost,* "The Road Not Taken," at 105 (1969). The Court takes this first step after much thought and reflection in the hope of aiding and promoting the efficient litigation of the core liability and punitive damages issues in this massive litigation. This will be a daunting task with long, difficult days ahead. However, the Court believes that resolution of these issues now will alleviate the constant need for duplicative resolution of these issues later in hundreds of courtrooms around the nation, a task unparalleled in scope.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion for class certification is granted in part, pursuant to Fed.R.Civ.P. 23(b)(3) and 23(c)(4), only in regard to the liability issues of fraud, breach of warranty (express or implied), intentional tort, negligence, strict liability and consumer protection and punitive damages issues.

**IT IS FURTHER ORDERED** that plaintiffs' motion for class certification is denied in all other respects.

**IT IS FURTHER ORDERED** that the Court defines the class as follows:

(a) All nicotine-dependent persons in the United States, its territories, possessions and the Commonwealth of Puerto Rico,

---

**17.** The Court emphasizes that these examples are not intended to be inclusive of any issues that

may arise.

who have purchased and smoked cigarettes manufactured by the defendants;

(b) the estates, representatives, and administrators of these nicotine-dependent cigarette smokers; and,

(c) the spouses, children, relatives and "significant others" of these nicotine-dependent cigarette smokers as their heirs or survivors.

IT IS FURTHER ORDERED that "nicotine-dependent," as used in the class definition, shall be defined as:

(a) all cigarette smokers who have been diagnosed by a medical practitioner as nicotine-dependent; and/or

(b) all regular cigarette smokers who were or have been advised by a medical practitioner that smoking has had or will have adverse health consequences who thereafter do not or have not quit smoking.

IT IS FURTHER ORDERED that the foregoing certification shall be deemed conditional only and may be altered, amended or set aside at any time before a decision on the merits.

IT IS FURTHER ORDERED that, pursuant to Fed.R.Civ.P. 23(c)(2), plaintiffs show cause as to the best notice practicable to all members of the class.

IT IS FURTHER ORDERED that plaintiffs propose a discovery plan to the United States Magistrate Judge by March 15, 1995.

IT IS FURTHER ORDERED that defendants file objections, if any, to this discovery plan with an alternative discovery plan by April 1, 1995.

IT IS FURTHER ORDERED that United States Magistrate Judge conduct a hearing as soon thereafter as feasible with respect to the proposed discovery plan(s) and, following this hearing, issue a Discovery Order to guide discovery in this matter.

IT IS FURTHER ORDERED that the Clerk of Court establish a Pleadings Depository in accord with this decision.